Fuhr v. Dean.

FUHR, Respondent, v. DEAN *et al.*, Appellants.

1. Where one having title to land and a right of entry enters thereon, although the entry be by force, the common law affords no civil remedy to the party dispossessed; he must resort to the statutory remedy by action of forcible entry and detainer.
2. A right of easement can be created only by deed.
3. A right to enter on another's land and to remain there for a certain time, or indefinitely at the pleasure of the party claiming the privilege, is an interest in the land which can only be created by deed.
4. A license can not be revoked so as to make acts done under it trespasses.

*Appeal from Washington Circuit Court.*

Plaintiff, Frederick Fuhr, set forth in his petition that on the 23d of January, 1854, and for a long time, say two years, prior to that day, he was " legally in possession, for the purpose of mining of lead ore, of a lot of ground in the ' Gum Diggings,' in Washington county, about one mile and a half north-west from Potosi, containing one acre, more or less, and set apart from the adjoining ground by stakes," &c.; and, for the purpose of exploring said ground and raising lead ore therefrom, he had at great expense of time and money sunk a shaft upon said lot, and cribbed it up securely with timber; that he had run two drifts from about the bottom of said shaft — one sixty, the other fifteen feet in length — which drifts had exposed the lead ore to view, and from which shaft and drifts he could daily raise a large quantity of ore; that

Fuhr v. Dean.

on said 23d day of January, 1854, the defendants unlawfully and with force and violence and against the will of plaintiff entered into said shaft, drifts, &c., belonging to said plaintiff and took possession thereof and expelled the plaintiff therefrom, and are using the said shaft and drifts of plaintiff and raising the lead ore from the said lot and converting it to their own use ; and they still have and hold to their own use the lead ore which said plaintiff had dug to the value of thirty-five or forty dollars. " The said plaintiff states that he has sustained damage by the unlawful acts of the said defendants to the amount of $1600 ; and for the recovery of which sum he brings this suit."

It appeared in evidence that John Dean was the proprietor of a certain tract of land embracing the lot in controversy ; that on the 1st of November, 1853, he sold said land to the Missouri Lead Company, of which defendants were the agents ; that Fuhr, the plaintiff, was at that time, and had been for some time previously, in possession of the lot mentioned in the petition ; that he was engaged in mining for lead ore ; that after the said sale, early in January, 1854, the defendants, as agents of said company, gave notice to said Fuhr to quit said lot ; that on the 23d day of January, 1854, the defendants entered and forcibly ejected the plaintiff. The court, of its own motion, instructed the jury as follows : " 1. The extent as to quantity and the duration in point of time of a 'miner's right,' in the absence of any special arrangement between the miner and the proprietor, is a matter to be determined and regulated by the custom prevailing in that behalf in the particular locality where the right attaches ; and where it appears that such right has attached with the consent of the proprietor, then it continues and is obligatory upon all persons claiming under such proprietor until forfeited or otherwise determined by the act and consent of the miner ; and if, while such right continues, the proprietor interferes and puts the miner out of his ground, then by such act he becomes a trespasser and is liable in damages for the value of the privilege of which the miner is thus deprived."

The jury rendered a verdict in favor of plaintiff for three hundred dollars.

*Noell*, for appellants.

I. The court should have given the instructions asked by the defendants, and erred in giving the first instruction given at its own instance. The plaintiff had no greater interest than a tenant at will. Defendants had a right to terminate the tenancy at any time upon giving reasonable notice. There was no proof of a custom. Besides, no custom can be sustained in opposition to the established rules of law. (R. C. 1845, p. 529; 6 Binn. 417; 1 Wash. C. C. 227; 2 id. 24; 10 Mass. 29; 3 Watts, 179; 2 Johns. 335; Wright, 573; 1 Hall, 602, 619.) The criterion of damages is wrong. The court instructed, first, that a miner's privilege extends to any length of time he chooses, and second, that whatever may be the value of such privilege, he is entitled to recover. This gives to a mere tenant at will the full value of the fee simple by way of damages for terminating without his consent his tenancy.

*Frissell*, for respondent.

I. The plaintiff was entitled to a much longer notice to quit. It is conceded that he was a tenant at will. The instructions given were not erroneous.

RICHARDSON, Judge, delivered the opinion of the court.

The action of trespass *quare clausum fregit* may be maintained on a naked possession against a wrongdoer, but it will not prevail against a party who had the title and right of entry. A defendant can justify under the plea of *liberum tenementum*, and can successfully defend the action if he can show superior title and right of possession, although possession is acquired by force. (7 Mon. 574; 1 Bing. 158; 1 John. Cas. 123.) The common law affords no civil remedy against a person who having a right enters forcibly; (Taunton v. Castor, 7 T. R. 431;) but the injured party must

appeal to the statutory action of forcible entry and detainer. (Krevet v. Meyer, 24 Mo. 107.) If, then, the plaintiff in this case has no interest in the land, but seeks to recover for the unlawful disturbance of an incorporeal right to dig ore on another's land, he can not recover on the case made in his petition, but must amend.

The first instruction given by the court was erroneous, for it assumes that a custom had been proven regulating the rights of miners, but the bill of exceptions is silent except as to the usage of a particular mine. The practice of a few persons in a business in which many are engaged will not establish a custom which all persons who are engaged in the same pursuit are presumed to know and recognize. A custom which would confer a right so important as that asserted in the instruction—being no less than the right of one person to occupy for the purpose of mining the land of another as long as he pleases without a deed or other writing—ought at least to be well established by proof. A local custom must be proved on the trial; and we may suppose there was more evidence given on the trial of this case than we see in the record, but it ought to have been preserved in the bill of exceptions, so that it could be ascertained what interest the plaintiff had in the land.

The judgment will be reversed and the cause remanded to be retried; and without intending to anticipate all the questions that may arise on another trial, it may be appropriate to notice some of them that will necessarily be presented. It will be developed by the evidence whether the plaintiff claims the right to mine on the defendant's land as an easement or under a license. If he claims an easement it must be established by deed, for being an incorporeal hereditament it lies in grant and can not pass by livery. (Arnold v. Stevens, 24 Pick. 109.) A mere license may exist by parol, and ordinarily is not assignable, and is revocable unless it has been executed and the party has incurred expense on the faith of it, so that he would be injured by its revocation. (3 Kent, 452; Pierpont v. Bernard, 2 Selden, 279; Wood v. Lead-

bitter, 13 Mees. & Wels. 838.) In Cook v. Stearns, 11 Mass. 536, the court held that a license is technically an authority to do something on the land of another without passing an estate in the land, and a license to do a particular act does not invade the policy of the law that requires conveyances of title or interest in land to be in writing, for it may amount to nothing more than an excuse for an act which would otherwise be a trespass; but an easement can not be acquired without a deed, or prescription which implies one. Savage, C. J., in Munford v. Whitney, 15 Wend. 380, after reviewing the authorities, observes, "they all agree in this, that any permanent interest in the land itself can not be transferred except by writing. Much of the discrepancy may have arisen from the different ideas attached to the word license. If we understand it as Chancellor Kent defines it, it seems to me there can be no difficulty. It is an authority to do a particular act upon another's land; is founded in personal confidence, and is not assignable. For example, A. agrees with B. that B. may hunt or fish on his, A.'s land; A. thereby gives B. a license for that purpose. This gives B. no interest in the land; he can not authorize any other person to go upon the land; it is a personal privilege granted to B. alone. If after A. has given his consent, and before B. has entered upon his land, A. changes his mind, he has a right to do so and forbid B. from entering upon his land for the specified purpose. The license is thus far executory and may be revoked at pleasure. If B. afterwards enters he is a trespasser. If however B. enters before any revocation of the license, the license is then executed, and it is not competent for A. to revoke it and make B. a trespasser. This doctrine is applicable only to the temporary occupation of land, and confers no right nor interest in the land."

Though it is difficult, often, to determine between an easement and a license, it seems to be settled that the right to enter and remain on another's land for a certain time or indefinitely at the pleasure of the party claiming the privilege is an interest in the land which can only be created by deed.

A license can not be countermanded, after it has been executed, so as to permit acts done under it to be treated as trespasses ; and though sometimes it may not be easy to ascertain the point of time at which a parol license may be revoked, when it is no longer executory and the licensee has expended money on the faith of it and is in the enjoyment of the privilege connected with it, yet there must be a time at which it is revocable ; otherwise it would create a permanent interest in land. It may be however that when acts have been performed upon the faith of a license, the party giving it may be equitably estopped from revoking it to the injury of the other party, but the estoppel will be limited by the injury it is invoked to prevent; as if A. gives B. the privilege of passing over his land, it may be countermanded at any time and no harm will be done, for the parties will stand after the revocation where they were before ; but if the license is that B. may build a house on A.'s land, and B. on the faith of the license erects the house, he might have the right of removing it, and A. would perhaps be denied the power of revocation until B. has been indemnified by the use of the property for the money he had expended on it.

The other judges concurring, the judgment will be reversed and the cause remanded.