## CAPE GIRARDEAU & THEBES BRIDGE TERMINAL RAILROAD COMPANY v. ST. LOUIS & GULF RAILWAY COMPANY, Appellant.

### Division Two, July 13, 1909.

1. **EJECTMENT: Showing As to Title.** Where defendant recognized plaintiff as the owner and derives his right of possession from him, plaintiff is not required, in his ejectment, to deduce title from the Government, plaintiff being in such case the common source of title.

2. ———: **License to Occupy: Expenditure of Money.** While a mere license to occupy land is revocable under all circumstances and at all times, a license may, upon a valuable consideration, become an agreement, as where the enjoyment of it must necessarily be preceded by the expenditure of money; and in such case the license cannot be revoked and the licensee ousted in ejectment. Where a railroad company was given permission by plaintiff to construct switch tracks over plaintiff's land, and did so at a large expenditure of money, the company becomes a purchaser of a right to occupy, and cannot be ousted in ejectment after an attempted revocation of the permit.

3. ———: ———: ———: **Estoppel: Not Pleaded.** An estoppel *in pais*, to be available, should be pleaded; but where parties have permitted the issue to be raised by the evidence and the case was tried as if it had been pleaded, it will be available just as if pleaded.

Railroad v. Railroad.

4. ———: **Action Failing: Recovery of Damages.** Where the suit is in ejectment with a prayer for damages as an incident thereto, and the ejectment fails because defendant is in possession under an agreement entitling him to continued occupancy, the recovery of damages must also fail. Plaintiff is entitled to damages, but cannot recover them in the ejectment.

Appeal from Scott Circuit Court.—*Hon. H. C. Riley,* Judge.

REVERSED AND REMANDED.

*W. F. Evans* and *Moses Whybark* for appellant.

(1) Ejectment was not the remedy of plaintiff in this case. Defendant entered by the consent of plaintiff, granted it as early as October 18, 1902, and began at once the construction of the connecting track which in part crossed the land sued for by plaintiff. Ejectment will not lie against a railroad in such cases. Provolt v. Railroad, 57 Mo. 256; McClellan v. Railroad, 103 Mo. 295; Maupin v. Railroad, 171 Mo. 187; Scarritt v. Railroad, 127 Mo. 298; Dodd v. Railroad, 108 Mo. 581; Kanaga v. Railroad, 76 Mo. 207; Childs v. Railroad, 117 Mo. 414; Gray v. Railroad, 81 Mo. 132; Roberts v. Railroad, 158 U. S. 1; Railroad v. Smith, 171 U. S. 260; 10 Am. and Eng. Ency. Law (2 Ed.), 528. (2) And as plaintiff cannot maintain ejectment under the facts in this case, neither can it recover damages in this ejectment suit, since the right to recover damages in ejectment cases is a right conferred by statute, as an incident to the right to recover the possession of the land sued for. R. S. 1899, secs. 3058, 3066, 3067, 3068. This right to recover rents and profits, by way of damages, in an ejectment suit, did not exist at common law, but after the recovery in ejectment, trespass for rents and profits was the remedy. Adams v. Gilchrist, 62 Mo. App. 639; Phillips v. Stewart, 87 Mo. App. 486; Dorthege v. Stew-

art, 35 Mo. 251; Stump v. Hornback, 109 Mo. 272; 10. Am. and Eng. Ency. Law (2 Ed.), 535; 15 Cyc. 200. And it was essential before the action for the recovery for mesne profits could be maintained that there should have been a recovery in ejectment. Young v. Downey, 145 Mo. 261; 15 Cyc., p. 213. There being no allegation in the petition that the relation of landlord and tenant ever existed between plaintiff and defendant, it fails to state a cause of action for use and occupation. The petition is simply a suit of ejectment to recover land with damages. Young v. Downey, 145 Mo. 261; Cohen v. Kyler, 27 Mo. 122.

*Giboney Houck* and *John A. Hope* for respondent.

(1)   Defendant entered upon the land in controversy on or about November 1, 1902. It surrendered possession to plaintiff on or about July 1, 1905. In the meantime, from Nov. 1, 1902, to July 1, 1905, defendant occupied the land, constructed and maintained railway tracks thereon, and used the same in the operation of its engines, cars and trains between its main line and its Mississippi river incline, and also for spurs, side tracks, cross-overs, switches and for general yard, switching and storage purposes. Defendant was, therefore, in the actual occupancy of the property on March 2, 1904, when this suit was instituted, thus establishing one of the things essential to recovery in ejectment. R. S. 1899, sec. 3060. (2)   The only remaining thing that plaintiff was required to show was that at the time of the commencement of the suit it was legally entitled to the possession of the premises. R. S. 1899, secs. 3053 and 3060. This requirement as to title was fully met by the repeated admissions and recognition on the part of defendant that plaintiff owned the property. There was no denial in the lower court that plaintiff owned the land; on the contrary, in all of defend-

ant's negotiations with plaintiff and in all of the pro-
ceedings in this suit and other litigation with plaintiff,
relative to the land, the fact that plaintiff had the title
was always recognized.  And it asserts in its brief in
this court that it "entered by the consent of the plain-
tiff, granted it as early as October 18th, 1902."  All
this constitutes a sufficient showing of title in plain-
tiff as against defendant in this action.  A licensee is
estopped to deny his licensor's title.  Neither can a
tenant deny his landlord's title.  25 Cyclopedia of
Law, sec. 3, p. 644; 2 Taylor on Landlord and Tenant,
sec. 705; Green v. Railroad, 82 Mo. 653; Loring v.
Harmon, 84 Mo. 123; Rumfelt v. O'Brien, 57 Mo. 569;
Williams v. Monroe, 125 Mo. 580; Worley v. Hicks,
161 Mo. 340.  (3)  Having title to the land when this
suit was filed, it follows that plaintiff was then enti-
tled to possession and to a judgment for recovery
thereof, unless defendant could show that its occu-
pancy was by virtue of some superior lawful right;
and the burden was on it to establish such right.  De-
fendant contends it was rightfully in possession.  It
will be found in its brief, where it is argued that "de-
fendant entered by consent of the plaintiff, granted
it as early as October 18th, 1902.  . . .  The license
given by plaintiff to defendant to occupy the land sued
for, which was necessary in order for it to make its
connecting track, under the facts in this case, became
non-revocable, and plaintiff could not maintain eject-
ment for its recovery."  Appellant cites many de-
cisions in support of this contention.  These decisions
do not apply at all in this case, for two reasons: First:
In the cases cited, the landowner was denied recovery
in ejectment on the ground of equitable estoppel, and
the facts constituting such estoppel were set up in
the several answers as a special and separate defense.
There is no such plea in defendant's answer in this
case; it is merely a general denial.  Maupin case, 171
Mo. 196.  Another rule running through all these

cases is, that the principle above mentioned (which is that of equitable estoppel arising from acquiescence of a landowner in the occupancy of his land by a railroad) is of no avail to the railroad company when sued in ejectment unless such estoppel is set up as a special affirmative defense in the answer. Roberts v. Railroad, 158 U. S. 260. Defendant cites, also, the decisions of this court in the Provolt, McClellan, Maupin, Scarritt, Dodd, Kanaga, Childs, Gray and Baker cases, in which the principle of equitable estoppel was discussed. In each of these cases the railroad company raised the defense of estoppel in its answer. No such defense was raised in the trial court in the case at bar, defendant's answer being merely a general denial. It is, therefore, precluded from invoking here the equitable principle discussed in these cases. It is a well-settled rule that estoppel, or other equitable defense, is not available under a general denial in an ejectment suit; it must be specifically pleaded. Russell v. Whitely, 59 Mo. 196; Chance v. Jennings, 159 Mo. 558; Casler v. Gray, 159 Mo. 595. Second: Even if defendant had pleaded, by way of estoppel, the alleged acquiescence by plaintiff in defendant's occupancy of the land, the facts in this case do not bring it within the principle announced in the cases on which defendant relies. (a) Defendant knew when it went on the land that the license under which it entered was revocable at the pleasure of plaintiff, and that, when revoked, its continued occupancy would be as a trespasser. (b) It entered upon the land on or about November 1, 1902; on that day it was notified in writing not to go on the land, or if already on, to get off; but it went ahead with the construction of its road, despite this notice. (c) It was given "a revocable permit or license to lay a track," and was at the same time notified that a right of way could not be granted; the telegram em-

phasized the fact that the permit was merely to lay a track, and was revocable. (d) On November 10, 1902, defendant suggested a lease of a right of way 100 feet wide at an annual rental of $25; plaintiff replied November 17, 1902, declining to execute the lease, and directed special attention to the fact that it had only given a revocable permit to lay a single track, protested against defendant's unwarranted assumption that anything further would be granted, and notified defendant that unless the track was removed within sixty days after notice (notice had been given November 1, 1902), it would have to pay an annual rental of $3,000. (e) In the face of this limited authority, a mere revocable permit to lay one track, and despite the fact that defendant was expressly warned that this permit meant only a single track and not a strip one hundred feet wide, and despite the prompt revocation of this permit and notice to defendant not to go on the land, defendant proceeded deliberately, defiantly, without any sort of right, to appropriate a strip, diagonally across plaintiff's land, one hundred feet wide, and built thereon, not one track, but a regular system of tracks, switches, cross-overs, incline and terminal yards, and never paid, nor offered to pay, one cent for the use of this valuable terminal property; and even held on stubbornly for sixteen months after being served with summons in this ejectment suit. From beginning to end, plaintiff's attitude was that of protest, not acquiescence. There is nothing in this case upon which estoppel can be predicated, even if defendant had pleaded the same, as was done in the cases cited in its brief. Railroad v. School District, 14 Colo. 335; Hooper v. Railroad, 78 Ala. 213; Railroad v. Cooper, 105 Pa. St. 239. (4) A railroad right of way can be acquired only by deed from the owner, or by condemnation, or by such adverse possession as will give title under the Statute of Limitations. Defendant did

not obtain the right to use plaintiff's land by either of these methods. If it had any right it was only that of a licensee, as its brief admits. This license was only "to lay a track," and, when granted, was on the express condition that it was revocable. But even if the right to revoke the permit had not been thus reserved, plaintiff had the right under the law to revoke it at will, and recover the land by ejectment. Pitzman v. Boyce, 111 Mo. 387; Cook v. Ferbert, 145 Mo. 465; 2 Lewis, Eminent Domain, sec. 298; Beck v. Railroad, 65 Miss. 172; Kremer v. Railroad, 51 Minn. 15; Railroad v. Railroad, 58 Minn. 128; 25 Cyc. 644.

GANTT, P. J.—This is an action of ejectment begun in the circuit court of Scott county on March 2, 1904, in which judgment was rendered for the plaintiff for possession of the premises and $3,000 damages. From that judgment the defendant has appealed to this court.

The land involved in the litigation is described as follows: "A strip of ground 100 feet wide out of United States Private Survey No. 794, in townships 29 and 30, range 14 east, 50 feet on either side of the following described center line, to-wit: Beginning at a head-block on the main line track of the St. Louis & Gulf Railway, which head-block is about 900 feet south of the intersection of the center line of said main track with the division line between townships 29 and 30; thence in a northerly direction on a 7 degree and 30 minute curve 40 feet to the point of curve of said curve; thence north 6 degrees east 2480 feet to the point of tangent of a 2 degree curve; thence in a northerly direction on said 2 degree curve 900 feet to the southern boundary line of the Hobbs land; excepting from said strip so much thereof as is now occupied by the main track of said St. Louis & Gulf Railway, leaving 7.2 acres,

more or less, involved in this suit." Ouster was laid as of the —— day of ——, 1902. Plaintiff averred damages by reason of injury and waste by digging of the soil and making excavations and embankments thereon and for the wrongful detention of the property to the amount of ten thousand dollars. Monthly rents and profits were alleged to be of the value of two thousand dollars. An amended answer filed at the October term, 1905, was a general denial.

The evidence on the part of the plaintiff was, first, a deed from John H. Crowder, Louis B. Houck and Giboney Houck to the plaintiff railway company of date April 28, 1902, for the tract of land which includes the land involved in this suit. Plaintiff also introduced in evidence, without objection, a deed from John H. Crowder, Louis B. Houck and Giboney Houck to the plaintiff railway company of date September 15, 1902, and recorded on September 19, 1902, to a tract of land described as all that parcel of said tract of land lying east of Houck's Missouri & Arkansas Railroad, now the St. Louis & Gulf Railroad, which has heretofore not been conveyed to the said Cape Girardeau & Thebes Bridge Terminal Railroad Company, and extending from the north line of survey 794 to the land now owned by Matthew Rose in section two, Scott county, Missouri, and which said land is hereby conveyed to the said railroad company to establish, maintain and operate railroad yards, and for railroad purposes, and for any other purposes whatever, and with the right of changing water courses, and with the right of cutting trees that may stand outside of the said land hereby conveyed, and which might endanger said railroad tracks built on said land, or the train operated thereon, and all of which land is situated in and a part of survey 794, township 30 north, range 14 east, fractional section 2, township 29 north, range 14 east.

Plaintiff next introduced in evidence a notice dated the first day of July, 1905, signed by the St. Louis, Memphis and Southeastern Railroad Company and St. Louis & Gulf Railway Company by Moses Whybark, their attorney, which said notice is in words as follows:

"Cape Girardeau & Thebes Bridge Terminal R. R. Co., Plaintiff, vs. The St. Louis & Gulf R. R. Co., Defendant, and

"Cape Girardeau & Thebes Bridge Terminal R. R. Co., Plaintiff, vs. The St. Louis, Memphis and Southeastern R. R. Co., Defendant.

"Actions of ejectment in the circuit court of Scott county, Missouri.

"To the above-named plaintiff in the above-entitled causes:

"You are hereby notified that the condemnation suit instituted by the St. Louis, Memphis and Southeastern Railroad Company in the circuit court of Scott county, Missouri, against you, and wherein commissioners were appointed by that court at the last regular term, was dismissed by the plaintiff on the 9th day of June, 1905.

"And you are further notified that the defendants in the above entitled causes now pending in the circuit court of Scott county, no longer having use for the possession of so much of the premises sought to be condemned in the condemnation suit aforesaid, and which land so sought to be condemned is a portion of the premises sued for by you in the said ejectment suits, hereby surrender to you the possession of the same, and release to you all the rights they acquired to the possession thereof under the permissions, licenses and agreements heretofore granted by you to said defendants, or either of them."

Said notice bore the following endorsement:

"I hereby certify that I served the within notice on July 3, 1905, in the city of Cape Girardeau, Cape

Girardeau county, Missouri, by delivering to Giboney Houck, president of Cape Girardeau & Thebes Bridge Terminal R. R. Co., and to John A. Hope, attorney for said railroad company, each a true copy of the same.                                     WILLIS MARTIN,
     "Marshal of the City of Cape Girardeau."

Mr. Giboney Houck testified that he knew the Cape Girardeau & Thebes Terminal Railroad Company, which owned the Cape Girardeau & Thebes Terminal railroad in course of construction from Cape Girardeau to a point where the Southern Illinois and Missouri bridge terminates on the west side of the river, and knew the land sued for, and that this defendant entered upon it in November, 1902, and it was notified on November 1, 1902, not to go on the land, or if it had begun work to discontinue it. This notice was given to Mr. Joshua Elder, vice-president and general manager of the defendant railroad company, and also to Major Brooks, its chief engineer, and was signed by John H. Crowder, plaintiff's president. The notice was served by Mr. L. B. Houck, and himself and his father, Louis Houck, had no connection whatever with the plaintiff railroad company. On cross-examination he stated that the plaintiff company began the construction of this road immediately after it was organized; that it commenced to buy right of way and survey the land from Cape Girardeau to the terminal of the western point where the bridge terminated on the west side of the river, and the road was located immediately where the western approach of the Thebes bridge is located, but they did not locate the line where the bridge was to be located, nor locate any road where the land sued for is situated, as that was required for yards and it was expected to get over this land to the elevation of the bridge by principles of engineering, but they had put nothing in there; that the defendant was in possession

and crossed this property diagonally. He found out afterwards that the bridge company expected to construct its approach over the same land that it had originally surveyed and laid out for railroad, but at the time they made the survey for the plaintiff the bridge company, so far as he knew, had not located any land nor filed a profile in Scott county. That he and Mr. Crowder and L. B. Houck bought the land from Stone and filed their profile on the 27th of April, 1902, but had purchased it on the 23rd or 24th of April. They were morally certain that the bridge was going to be located at the point where it is now located on the west side, and they bought the land because of that fact. They have been in litigation with the bridge company ever since then.

They understood the bridge terminated on the west side of the river, because the act of Congress located it, but did not know it was going to build its approaches to connect with the Cotton Belt. He testified that no survey was made by the plaintiff company on the bank of the river where the connecting track of the defendant is located, and this land plaintiffs claim in this suit is about three thousand or perhaps four thousand feet in length and one hundred feet in width and plaintiff is claiming so much of the said land as is occupied by the Thebes Bridge on the west side. It says nothing about the claim of the bridge company in this petition, but plaintiff claims that said company has no right on certain land it is occupying on the west bank of the river and plaintiff claims to be the owner of the two hundred feet under the bridge approach. He testifies that the bridge company was not building the approach when plaintiff and its immediate grantors bought the land, but thinks that the bridge was in process of building when this suit was brought. Plaintiff had bought its right of way from Cape Girardeau to Gray's Point and began to buy in April, 1902.

He testified he did not know how much they bought in April, 1902, that they bought the land extending three or four thousand feet from the bank of the river west; part of it was the land involved in this suit. The witness stated that Mr. Crowder became president of the plaintiff company when it was first organized in the latter part of April, 1902, and was re-elected in 1903.

The witness, Mr. Houck, succeeded Mr. Crowder as president in the beginning of the year 1905. Mr. Crowder died in 1904. L. B. Houck was president in the interim between the death of Mr. Crowder and the election of Mr. Giboney Houck, the witness. Witness further stated that while this strip of land was bought for railroad purposes, it had in fact never been used by plaintiff thereafter. The land sued for runs across their tracks diagonally. The land north of the land sued for is owned by Mrs. Hobbs and the Cotton Belt Railroad and the connecting track built by the defendant has been torn up, but it formerly made connection with the Cotton Belt Railroad. Witness does not know whether it made connection with Manning's Landing or not, but from the north end of the land in suit to the connection of the defendant's track with the Cotton Belt is about two miles and the part of the track on the plaintiff's land is three thousand or three thousand five hundred feet and this land is not subject to overflow. The connecting track runs several hundred feet south of the three hundred feet claimed by the bridge.

Over the objection of the defendant Mr. Houck was permitted to testify that defendants admitted that plaintiff was entitled to $3,000 and to use a single track and that this was a reasonable value for the use of the railroad track across the land. He had never had any personal conference with Mr. Yoakum, the president of the defendant railroad company, about the rental value of this property; when he says he got

the admission from Mr. Yoakum, he meant the company. Mr. Yoakum never said he would pay $3,000, and never wrote a letter that he would pay it. Mr. Houck further stated that the negotiations with reference to the desire of the defendant to get the use of the property were carried on from the beginning with Mr. Yoakum and Mr. Hammond, vice-president and general manager of the Chicago and Eastern Illinois Railroad and also of the defendant.

The plaintiff then offered in evidence the following notice directed to J. F. Elder, vice-president and general manager of the St. Louis and Gulf Railroad Company, and J. F. Brook, chief engineer, dated Cape Girardeau, November 1st, 1902:

"Gentlemen: As I am informed that your agents and employees are constructing, or about to construct, a railroad track over the property of the Cape Girardeau & Thebes Bridge Terminal Railroad Company, situated in survey 794, township 30 north, range 14 east, and fractional section 2, township 29 north, range 14 east; and as no agreement has been made as to the said property between said company, you, your agents or employees, you are hereby notified to cease work if begun on said property, and if not begun, not hereafter to enter upon the same to construct a railroad track.

"Respectfully,<br>"J. H. CROWDER,<br>"President, etc."

Plaintiff next read a letter from Mr. Hammond dated January 22, 1904, this letter is as follows:

"Mr. J. H. Crowder,
    "Cape Girardeau, Missouri.
    "Dear Sir: Referring to your letters of January 8th and 20th, beg to advise that the question raised is

one that I personally know nothing about. I have taken the matter up with President Yoakum in order that I may hear his side of the case, and will write you as soon as I can get necessary information.

"Yours truly,

"R. R. HAMMOND,

"Per Hitt."

Plaintiff then offered in evidence a letter signed by L. B. Houck to Mr. Yoakum of date November 17, 1902, as follows:

"Your favor dated November 14th came to hand and I return agreement signed by Mr. Guy, president of the Gulf Railway, sent to us because the same is not in accordance with my agreement with you.

"In answer to your telegram of the 17th of October, on the next day I wired you as follows:

"'Answering your telegram of yesterday. Will give permission to lay a track from the south boundary line of Mrs. Hobbs' to a connection with the existing St. Louis & Gulf Railway track. We are not in a situation now to either sell or make you a grant of right of way, and a revocable permit or license to lay a track is all we can give you, but as soon as matters to which you refer in your telegram are settled we will come to an amicable agreement with you and one I know that will be entirely satisfactory to you as we feel very friendly to your interests.'

"Afterwards I reported to the Cape Girardeau and Thebes Bridge Terminal Railroad Company the telegram I had wired you and advised them of the permit I had given you to lay a railway track as therein set out, and accordingly was authorized to send an agreement giving you this permit for company to lay a track as aforesaid, leaving, however, the amount of annual rental that was to be paid by the Gulf Company blank, in case after the track should be laid by the Gulf Company the company should refuse to re-

move the same. This agreement we sent you is the only agreement we can sign at present. Agreement you sent us dated 10th of November, 1902, we must refuse to sign because not in accordance with our agreement. We could not let you have a strip of ground 100 feet wide for a single track, and I never agreed to give you such a strip, and I never agreed that you should have fifty feet on each side of the center line of the St. Louis & Gulf Railway 'as same is located,' or otherwise, and all of which is stated in agreement that you propose for us to sign. We cannot admit, and do not admit, that the St. Louis & Gulf Railway has been located through our terminal property. Why this peculiar phraseology which is in no wise warranted by my telegram and the permit I gave you personally should have been used, I cannot understand.

"Furthermore, we, under the circumstances now, will have to insist that in case the tracks are not removed within sixty days after notice, the Gulf Railway shall pay an annual rental of three thousand ($3,000.00) until track is so removed.

"All we desire is to protect our interests. We cannot afford to jeopardize our interests. As stated in my telegram, we feel very friendly to the Frisco Railroad, and, of course, I have no doubt that you feel friendly to our interests, but at the same time it would be absurd for us to let our property be held against our will at an annual rental of twenty-five dollars. You do not expect us to be so foolish.

"Have no doubt that as soon as the bridge litigation is settled our company and the Frisco will be able to make a very satisfactory arrangement with you, but until that matter is settled we cannot give away any rights, privileges or advantages we now hold and which are important to us.

"Very truly yours,
"Louis B. Houck."

Mr. L. B. Houck testified that he was president and one of the stockholders of the plaintiff and the letter just read in evidence to Mr. Yoakum was written by him, and the defendant never made any objection to the charge of $3,000 as fixed as the annual rental of the property, and the witness considered that reasonable. The defendant used the property for connecting track between its incline and its railroad, also for yards and a general storage of cars to be transferred across the river from Thebes to the Missouri side. The property in question is a strip four or five thousand feet long and two hundred and fifty to three hundred feet wide, and is the only place south of Gray's Point to below Commerce that could be used for transfer purposes, and he considered it very valuable for those purposes. Defendants first put down one track and then another track, and if he remembered correctly, two or three side tracks.

Witness fixed the rental value of the property at $3,000 per annum for the construction of the track over their line, as plaintiff only gave them the privilege of putting down one track, and for the use of the land on account of the other three tracks a reasonable rental would be betweeen ten and twelve thousand dollars.

On cross-examination he stated that they had fifteen or twenty acres and the land in suit was worth over one hundred thousand dollars. He did not know how much it was assessed for. Plaintiff never had any tracks on the land but intended to have them. They had never yet operated their railroad, but they had constructed several miles and secured the right of way; only a few miles of the track had been laid down. The rails on plaintiff's railroad are laid down about two and a half miles south of Cape Girardeau, these were laid about three or four months before the trial. Plaintiff had only run construction trains on this said road. Had located the yards on the land in

suit before they bought it, but had never made a profile and filed it.

He stated that they had paid $15,000 for the land purchased from Stone and Finley. He testified that his company had never had any written agreement with the defendant to pay rent. He did testify in the condemnation suit in the case of the bridge company against Stone and says that he swore that he had a contract with the defendant to pay him $3,000 per year, but does not remember the exact language and he based that upon the letter in which he had stated the price and on the bills rendered for the same, to which the defendant had never made objection.

Mr. Giboney Houck being recalled identified certain letters and then stated that the railroad track was put down on this land by the defendant in December, 1902, and he says it was not completed until February, 1903, so that they could run cars thereon. On this the connecting track extended upon their land about one-fourth of a mile, and this would make the connecting track from the railroad of the defendant to the Cotton Belt nearly a mile long. Plaintiff or its immediate grantors had bought this land before the Frisco bought the Chicago and Eastern Illinois Railroad. The St. Louis Valley and Illinois Central Railroad terminate on the Illinois side opposite this land. On the Missouri side the Cotton Belt and the Gulf Railroad, which is a part of the Frisco system, and the Iron Mountain approach this bridge. The whole river front on the west side is owned either by the Bridge Company or by one of these railroads, except a little piece that is owned by the plaintiff. All the other land available for railroad purposes is owned by the St. Louis, Memphis and Southwestern or the Gulf or Cotton Belt. The land is level and can be used for putting in yards, and the defendant company entered upon it in the face of plaintiff's notice not to do so, and the defendant filed its condemnation suit to con-

demn this strip of land and the St. Louis, Memphis and Southwestern also filed a condemnation suit. Witness thought the land ought to earn the interest on one hundred thousand or one hundred and fifty thousand dollars. On cross-examination he stated that when he fixed this value he had in view the whole tract, which was destroyed for railroad purposes by the construction of defendant's tracks diagonally. The bridge was completed and cars ran over the Thebes on May 28, 1905. He does not know when defendant took up these tracks over this land. The defendant's railroad runs parallel with the Mississippi river most of the way from Thebes Bridge to Commerce, four and one-half or five miles. If the connecting track had not been built, the Gulf railroad could have run beyond this track to Fremsdorf and then run to the river and had the same facilities for crossing, but that would have depended on the management of the Cotton Belt Railroad.

Plaintiff then introduced the following letter addressed to R. R. Hammond, general manager of the Chicago, Eastern Illinois Railway Co., dated January 8, 1904, and marked as received January 11, 1904:

"Dear Sir: The St. Louis & Gulf Railroad at the request of Mr. Yoakum was given a license to put a temporary track on certain property belonging to the Cape Girardeau & Thebes Bridge Terminal Railroad Company and located just below what is known as Manning's Landing or West Bank, rent to be on the basis of $3,000 a year for a single track. Since this the St. Louis & Gulf Railroad has put in more than one track without permission from any one. Therefore rental based on $3,000 a year will no longer be satisfactory and some other arrangements should be made.

"I have noticed that for some time past the St. Louis & Gulf Railroad has been furnishing the South-

ern Illinois & Missouri Bridge Company, by means of the track above mentioned, material to facilitate the construction of the bridge. When the Cape Girardeau & Thebes Bridge Terminal Railroad Company agreed to give to the St. Louis & Gulf a license to lay temporary track across its property it was mentioned and understood that the track should not be used to furnish the Southern Illinois & Missouri Bridge Company with material, etc., because the company is now and has been in litigation with this bridge company, which, without authority of law, as we claim, is doing business in Missouri and endeavoring to condemn terminal land belonging to us. Before your track was laid, contractors of bridge company applied to us for facilities our land affords to construct bridge and we declined to rent these facilities at any price. Under the circumstances we think it hardly right your company should furnish these facilities when it was understood your track on our land should not be used for that purpose.

"Yours truly,
"J. H. CROWDER."

Plaintiff also introduced as a witness Frank Oliver, section foreman for the St. Louis & Gulf Railroad in 1902. His section ran up the river past Manning's Landing, and he says it was about November 1, 1902, that the defendant company entered on the river front north of the bridge. He put in the side tracks there running from the main line under where the bridge is now. The abutment of the bridge must be about thirty feet, and at that time he had laid one thousand nine hundred feet. The incline was at Manning's Landing and must have been about four hundred feet long.

Plaintiff next offered petition in the case of St. Louis & Gulf Railroad vs. The Cape Girardeau and Thebes Terminal Railroad Company filed in the office of the Scott County Circuit Court, March 31, 1904.

This was a suit brought to condemn the land sued for in this case except the portion under the bridge approach, which was two hundred feet in length and one hundred feet in width and was instituted after this ejectment suit was brought. The petition alleges in a general way the various railroads on the Illinois side and the others on the Missouri side of the Mississippi river and it was needful for it to make connection in order to carry through passengers and freight to and from said railroads and that it had entered on the land sought to be condemned by consent of plaintiff and constructed its tracks, and could not agree with plaintiff for compensation, and asked for the appointment of commissioners.

Plaintiff then offered the record of the said court made October 17, 1904, of the dismissal of this case by the plaintiff therein.

Plaintiff then offered a condemnation petition brought by the St. Louis, Memphis and Southeastern Railroad Company against it, filed April 19, 1905. This petition was in practically the same form as the other petition and was to condemn the same property, but alleged that the St. Louis & Gulf had by deed dated June, 1904, conveyed all of its property to the said St. Louis, Memphis and Southeastern Railroad Company. The answer set forth various reasons why the suit for condemnation should not be allowed. Plaintiff then introduced the dismissal of this last case on June 9, 1905.

Defendant then introduced various witnesses, landowners in the vicinity of this land, who testified that this land was worth all the way from twenty to perhaps forty or fifty dollars per acre for agricultural purposes. Several of these witnesses testified that they did not see how land could be purely valuable for terminal purposes, for the reason that the bridge was forty or fifty feet above it. Another witness thought for railroad purposes the strip one hun-

dred feet wide would be worth $150 per acre, and that one hundred dollars per month would be the proper rental for railroad purposes. On cross-examination he fixed the rental value any where from fifty to two hundred dollars per month. Judge Albrecht testified that he had lived near the land for many years and that this connecting track was about three thousand feet on this land, and it was reasonably worth $45 per acre and for farming purposes land will not bring over $3 per acre in that neighborhood, but in his opinion the value of the land covered by the railroad tracks beginning November, 1902, up to July, 1905, was worth more than for farming purposes, and that he thought $75 per acre for a year for the portion covering the right of way would be reasonable, and that it could be restored to its farming condition for $150, and that he would place it back in that condition for that sum.

Defendant read in evidence a deed from the St. Louis and Gulf Railroad Company to the St. Louis, Memphis and Southern Railroad Company of date June, 1904, and recorded in Scott county June 16, 1904. Defendant then read in evidence an agreement between J. H. Crowder and Giboney Houck transferring all of Mrs. Crowder's property in the plaintiff railroad for $6,500.

Defendant also introduced the clerk who produced the assessment books showing that this land had never been assessed to the plaintiff but had been assessed to J. H. Crowder, L. B. Houck and Giboney Houck and there were three hundred and three acres in the tract and it was assessed for 1904 and 1905 at $2,400, and the same in 1903 and 1902. The defendant also read in evidence the deed from Richard Finley and Houck of date April 24, 1902, conveying the land on which the connecting track is laid and other lands

for $15,000. Defendant also read in evidence the final judgment of condemnation in the case of the Southern Illinois and Bridge Company vs. Stone and Finley, showing that plaintiff had no title to the two hundred feet of land under the bridge.

Defendant then offered a telegram to L. B. Houck from B. F. Yoakum dated St. Louis, October 17, 1902:

"Louis B. Houck, Cape.

"We need for construction of track to new incline we are now building, which is south of Manning's Landing, a strip of land one hundred feet wide, commencing at the south boundary of the land owned by Mr. Hobbs; thence practically parallel with the river and about three hundred feet inland to connect with the existing St. Louis & Gulf track, a total distance, I should say, of about three thousand feet. Important. This is well known to your uncle, and I wish you would confer with him at once, and wire so work can be pushed as fast as possible. Material is now being received.

"B. F. YOAKUM."

And also answer of L. B. Houck to that telegram, dated October 18, 1902, as follows:

"Mr. B. F. Yoakum, St. Louis, Mo.

"Answering your telegram of yesterday. Will give you permission to lay track from south boundary line of Mrs. Hobbs' to a connection with existing St. Louis & Gulf Railway track. We are not in a situation now to either sell or make you a grant or right of way, and a revocable permit or license to lay a track is all we can give you, but as soon as matters to which you refer in your telegram are settled, we will come to an amicable agreement with you, and one that I know will be entirely satisfactory to you, as we feel very friendly to your interests.

"L. B. HOUCK."

Also telegram from Louis Houck to B. F. Yoakum dated Cape Girardeau, Mo., October 18, 1902, as follows:

"Mr. B. F. Yoakum, St. Louis, Mo.

"Replying to your telegram of the 17th. Talked to my nephew and he agreed to give permit to lay a track as you indicate to the St. Louis & Gulf. Claims that he cannot grant you right of way or sell you right of way, but as soon as legal matters are adjusted to which you refer, he will come to an agreement with you that will be entirely satisfactory, and all that he feels satisfied can be in reason asked. Individually I will do all I can to assist you in this matter.

"Louis Houck."

I. In so far as the title to the strip for which this action of ejectment was brought, is concerned, we think plaintiff was not required, as against defendant, to deduce title from the Government, for the reason that defendant recognized plaintiff as the owner and derived its right of possession from plaintiff. In a word, plaintiff was the common source of title as to the parties to this action. Neither is there room to doubt that defendant was in actual occupancy of this strip on March 2, 1904, when this action was commenced.

An exceedingly important question is presented on this record and that is, can plaintiff maintain ejectment in view of the undisputed and conceded facts in evidence? On the 17th day of October, 1902, B. F. Yoakum, the president of the defendant railroad company, sent the following message of that date to L. B. Houck, vice-president and general manager of the plaintiff railroad company:

"We need for construction of track to new incline we are now building, which is south of Manning's Landing, a strip of land one hundred feet wide, commencing at the south boundary of the land owned

by Mr. Hobbs; thence practically parallel with the river and about three hundred feet inland to connect with the existing St. Louis & Gulf track a total distance, I should say, of about three thousand feet. Important. This is well known to your uncle and I wish you would confer with him at once and wire so work can be pushed as fast as possible. Material is now being received."

On the next day, L. B. Houck answered that telegram by another, in these words:

"Answering your telegram of yesterday. Will give you permission to lay a track from south boundary line of Mrs. Hobbs' to a connection with existing St. Louis & Gulf Railroad track. We are not in a situation now to either sell or make you a grant of right of way and a revocable permit or license to lay a track is all we can give you, but as soon as matters to which you refer in your telegram are settled we will come to an amicable agreement with you and one that I know will be entirely satisfactory to you as we feel very friendly to your interests."

Under this authority defendant company entered upon this strip. Clearly it was not there as a trespasser or without the consent of plaintiff. The law is settled in this State that while mere license is revocable under all circumstances and at any time, a license may become an agreement on valuable consideration, as where the *enjoyment of it must necessarily be preceded by the expenditure of money,* and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for valuable consideration. [Baker v. Railroad, 57 Mo. l. c. 271; Rerick v. Kern, 14 Serg. & Rawle, 267; Fuhr v. Dean, 26 Mo. 116.]

While plaintiff insists it revoked the license it gave defendant by the notice given by Mr. Crowder to Elder, the vice president of defendant, and J. F. Brook, chief engineer, on November 1, 1902, it is ob-

vious that Mr. Crowder was mistaken in regard to defendant not having an agreement with plaintiff to enter, but more than this, plaintiff did not rely upon this notice. The letter of January 8, 1904, from Mr Crowder to Mr. Hammond, is utterly inconsistent with the claim that plaintiff had the right to oust defendant from this right of way without further consideration. That letter is simply a protest against defendant's hauling material for the Southern Illinois and Missouri bridge company, because said company was in litigation with the plaintiff and was intended to foreshadow the claim for large rentals. There is a plain admission that defendant had a license to put its tracks upon this strip of land, long after the tracks had been laid, and traffic was being carried thereon. Now a license to construct a railroad track necessarily involves the expenditure of money by the licensee. In this case Mr. Yoakum advised the plaintiff that the demand by defendant for a right of way over this strip was urgent; that the material was being received and requested an answer by wire. The license or permission to lay the track was given by telegram and the section foreman testified that by the 10th or 15th of November he had one thousand nine hundred feet of the three thousand feet of rails laid down, and at that time plaintiff was considering and rejecting the agreement sent by Mr. Guy.

In that communication Mr. L. B. Houck says to Mr. Yoakum: "Furthermore we, under the circumstances now, will have to insist that in case the tracks are not removed within sixty days after notice, the Gulf Railway shall pay an annual rental of three thousand ($3,000.00) dollars until track is removed."

If this statement refers to the notice given by Mr. Crowder, it is a modification of the peremptory order to get off the strip to a conditional demand for $3,-000 a year rental if defendant remained on the land, but at all events this rental was not to be paid save as

the price of the occupation of this strip by a railroad track laid down by the defendant company, a condition not to be performed until after the road bed was graded, the ties and rails laid down; in a word, until after the expenditure had been made by defendant, and thus the facts bring the case directly within the principles of the well-considered case of Baker v. Railroad, 57 Mo. 265, and the cases therein mentioned and approved, and Fuhr v. Dean, 26 Mo. 116. But while this is unquestionably the law of this State, plaintiff invokes the rule of pleading that this defense of equitable estoppel is not open to defendant, for the reason that it is not pleaded. That an estoppel *in pais* should be pleaded in order to be available is true. [Bray v. Marshall, 75 Mo. 327; Noble v. Blount, 77 Mo. 235.] But in Price v. Hallett, 138 Mo. l. c. 574, this court said: "It seems to us this doctrine has peculiar weight when invoked against the admissibility of evidence when no issue of estoppel has been tendered in the pleadings or when an estoppel *in pais* is urged for the first time in this court, but where parties have permitted an issue of the kind to be raised by the evidence without objection and have had full opportunity to try the issue we are unable to draw a distinction between such a case and those cases in this State in which parties have neglected to file replies, and this court has held that it was too late after trying the case as if a reply had been filed to claim that the answer was admitted."

An examination of the record will disclose that much of the testimony in regard to this license came from the plaintiff in the first instance and that no such objection as this was urged when the telegrams between Mr. Yoakum and Mr. L. B. Houck were offered in evidence; indeed, we find no objection of any kind in the abstract before us. With these telegrams in evidence and the proof that by the permission therein granted defendant entered and constructed its tracks,

we think the facts were before the court whether formally pleaded or not, and it is too late now to raise the question of pleading for the first time; and following the rule announced in Provolt v. Railroad, 57 Mo. 256, and Baker v. Railroad, 57 Mo. 265, we think the plaintiff could not maintain ejectment against defendant as it had entered upon the strip by the consent and permission of plaintiff and constructed its track upon the assurance that later it would be granted a perfectly satisfactory arrangement. Having expended its money on the faith of that license it could not be ousted of its privilege by an action of ejectment.

II.    That plaintiff is entitled to compensation for the use of its land by defendant, there can be no sort of doubt. We have so far simply held that under a long and unbroken line of adjudications in this State, its remedy was not ejectment. The question now arises, can the verdict and judgment for the $3,000 of damages be so dissociated from the judgment of recovery of the land, that it may be affirmed, notwithstanding the judgment of ejectment must be reversed? The petition counts in ejectment and for damages as an incident thereto as provided by our statutes, sections 3058, 3066, 3067 and 3068, Revised Statutes 1899. There is no allegation of the relation of landlord and tenant, and hence it fails to state the essentials of a cause of action for use and occupation as was clearly pointed out in Young v. Downey, 145 Mo. l. c. 267, 268. The right to recover rents and profits by way of damages in an ejectment suit did not exist at common law, but after the recovery in ejectment trespass for rents and profits was the remedy. [Stump v. Hornback, 109 Mo. 272; Young v. Downey, 145 Mo. 261.] It follows that as the verdict and judgment for damages depends upon the judgment in ejectment and as ejectment will not lie under the facts in the record,

the judgment for damages and *mesne* rents and profits is without any legal basis and must fail along with the judgment in ejectment upon which it must rest under our laws. That plaintiff is entitled to relief in another form we have no doubt, but, as was said in Provolt v. Railroad, 57 Mo. l. c. 264, "the only question that we are called upon to decide is whether under all the facts and circumstances of this case, ejectment will lie, and we think it will not." The judgment must therefore be reversed and the cause remanded in order that plaintiff may take such other steps as it may be advised are necessary.

*Burgess* and *Fox, JJ.*, concur.