**MAIN STREET FEEDS, INC.,**
**Plaintiff–Respondent,**

v.

**Viga HALL and Jane Hall,**
**Defendants–Appellants.**

No. 22797.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 2000.

Motion for Rehearing or Transfer to Supreme Court Denied May 18, 2000.

Carr L. Woods, Monett, Craig A. Smith, Daniel, Clampett, Powell & Cunningham, Springfield, for appellant.

John Cowherd, Mt. Vernon, for respondent.

JOHN E. PARRISH, Judge.

Viga Hall and Jane Hall (defendants) appeal a judgment granting Main Street Feeds, Inc., (plaintiff) an easement for certain purposes over a 30–foot wide strip of land owned by defendants. The judgment also enjoins defendants from interfering with plaintiff's use of the property for the purposes for which the easement was found to exist and from constructing any fence or barrier within the easement area. Defendants were also ordered to fill holes that had been placed on the property for construction of a fence. The trial court concluded that plaintiff had an enforceable oral easement that crossed the property owned by defendants. This court reverses the judgment and remands with directions for entry of judgment consistent with this opinion.

This is the third time this case has been before this court.[1] *See Main Street Feeds, Inc. v. Hall,* 944 S.W.2d 328 (Mo.App. 1997), (*Hall I* ), and *Main Street Feeds, Inc. v. Hall,* 975 S.W.2d 227 (Mo.App. 1998), (*Hall II* ). *Hall II* should be read with this opinion. A detailed account of the facts of the case appears there. Facts that are recited in *Hall II* will not be restated in this opinion except as may be

---

1. The trial court denominated the judgment that is appealed "Second Amended Judgment."

necessary to discuss the allegations of error that are part of this appeal.

The issue of whether each party had an easement over land that belonged to the other was not resolved in *Hall II* because the trial court's basis for finding reciprocal easements could not be ascertained. The part of the judgment that declared each party had an easement over land that belonged to the other was reversed. The case was remanded. The trial court was "directed to review the question of whether either party has an easement over the property of the other and to state the basis for the conclusion it reaches." *Hall II*, 975 S.W.2d at 234.

After remand by this court, the parties were permitted to file amended pleadings.[2] Plaintiff asserted three new theories for its claim that it had an easement over defendants' property. Defendants asserted one additional theory for the claim that they had an easement over plaintiff's property. Additional evidence was heard and judgment entered. The trial court found:

1. That Plaintiff has an easement over the real estate described in Exhibit B attached hereto, said property being owned in fee by the Defendants. Said easement grants to Plaintiff the right of its customers, suppliers, employees and officers to temporarily drive upon and use said property described in Exhibit B while transacting business with Plaintiff.

2. That Defendants have an easement over the real estate described in Exhibit A attached hereto, said property owned in fee by Plaintiff. Said easement grants to Defendants' customers, suppliers, owners [sic] and employees the right to temporarily drive upon and use said property while transacting business with Defendants.

3. That each party has the above easement rights over the land of the other due to the oral agreements of the parties and the parties' predecessors in

title which grant (or granted) to the other party (and/or each parties' [sic] predecessors in title) the easement rights over the other's property for purposes set out above in paragraphs 1 and 2. The Court finds that these oral easements were (a) accompanied by consideration (i.e., the permission granted by each party and/or their predecessors in title for the other to use the first party's property for purposes of access to the latter party's business, and the agreement and actions of both parties in jointly maintaining the common area), (b) that both parties and their predecessors in title have relied upon the easement rights granted by the other to develop each parties' [sic] business and that both parties and their predecessors in title have made substantial investments in their respective properties in reliance upon the continued enjoyment of the easement rights granted by the other party for the purposes set forth above, (c) that each party (and their predecessors in title) has been granted this use over the other's property (and has actually enjoyed such use over the other's property) for at least the past forty-five years, and that, until Defendants attempted to block Plaintiff's access to its property in June of 1995, each party and their predecessors in title had performed their agreement in allowing the other party reasonable access over each party's property. Therefore, those oral easements are valid, are not barred by the statute of frauds and should be enforced by this Court.

4. The Court further finds upon the evidence that each party has easement rights by estoppel over the property of the other for the purposes set forth above in paragraphs 1 and 2 since each party and their predecessors in title, upon reliance on the oral permission granted to the other party as set forth

2. "[A]mendments of pleadings in cases on general remand are permissible and motions to amend are directed to the sound discretion of the trial court." *Arnold v. Ingersoll–Rand Co.*, 908 S.W.2d 757, 760–61 (Mo.App.1995).

above, has incurred great expense in developing each parties' [sic] business. The Court further finds that this reliance by both parties was reasonably expected in order for each party to enjoy the oral easement granted to it by the other party. Therefore, both parties are estopped from now denying to the other party the above-mentioned easement rights as set forth in paragraphs 1 and 2.

. . .

The references in the trial court's judgment to Exhibits A and B are references to legal descriptions of real estate. Exhibit A describes the real estate that *Hall II* determined belonged to plaintiff. Exhibit B describes the real estate that *Hall II* determined belonged to defendants.

◼ Defendants' first allegation of trial court error is directed to the trial court's finding that plaintiff had "easement by estoppel" over the land that *Hall II* determined belonged to defendants. Point I asserts that there was no evidence that expenditures were required in order for plaintiff to enjoy the easement; that expenditures for enjoyment of the easement is a required element for an easement by estoppel.

"The general rule is that an easement may be created by grant, express or implied, or by prescription but it cannot be created by parol, except that in certain circumstances an easement may exist by reason of an estoppel." *Allee v. Kirk*, 602 S.W.2d 922, 924 (Mo.App.1980). *Allee* suggests that easements by estoppel have long been recognized in Missouri, citing *Fuhr v. Dean*, 26 Mo. 116 (1857).

*Fuhr* was an action brought by a miner who had been forcibly removed from a mining site where he had a shaft and where he mined for lead. The miner sought damages contending he entered upon the premises on the authority of the individual owning the property at the time of his entry; that his possession was law-

ful. The miner obtained a money judgment that the Supreme Court of Missouri reversed. The issue of "easement by estoppel" was not a part of the case. However, in *dictum* directed to issues that might arise upon retrial, the court observed, "It will be developed by the evidence whether the plaintiff claims the right to mine on the defendant's land as an easement or under a license." *Id.* at 119. *Fuhr* suggests if the miner claimed an easement, "it must be established by deed." *Id.* The opinion discusses ramifications of a license to use real estate. It notes, "A mere license may exist by parol, and ordinarily is not assignable, and is revocable unless it has been executed and the party has incurred expense on the faith of it, so that he would be injured by its revocation." *Id.*

*Fuhr* explains:

[W]hen acts have been performed upon the faith of a license, the party giving it may be equitably estopped from revoking it to the injury of the other party, but the estoppel will be limited by the injury it is invoked to prevent; as if A. gives B. the privilege of passing over his land, it may be countermanded at any time and no harm will be done, for the parties will stand after the revocation where they were before; but if the license is that B. may build a house on A.'s land, and B. on the faith of the license erects the house, he might have the right of removing it, and A. would perhaps be denied the power of revocation until B. has been indemnified by the use of the property for the money he had expended on it.

*Id.* at 121.

*Allee* also states, "One of the leading cases on this subject is *Sanford v. Kern*, 223 Mo. 616, 122 S.W. 1051 (1909)." 602 S.W.2d at 925. Like in *Fuhr*, the discussion of "easement by estoppel" in *Sanford* is *dictum*. *Sanford* found that the right of the party claiming the easement "originated in contract"; that, therefore, the easement was acquired by prescription; "that

is, on adverse user as of right openly and uninterruptedly for more than 10 years." 122 S.W. at 1055.

*Sanford* suggests, nevertheless:

There is a further doctrine comporting with reason and justice and recognized as clear equity, viz., that a license to use a way or an easement, though without consideration at its inception, may not be revoked at will where, from the very nature of the license, the licensee was expected to go to great expense in order to enjoy it, and where that expense has been incurred. In such case equitable estoppel arises and the relations of the parties may not be severed and the easement destroyed at the whim and by the act of the licensor alone. They must be severed, if at all, on equitable principles.

122 S.W. at 1056. *Sanford* cites *Cape Girardeau & T.B.T.R. Co. v. St. L. & G. Ry. Co.*, 222 Mo. 461, 121 S.W. 300 (1909), for this proposition.

*Cape Girardeau & T.B.T.R. Co.* involved a 100–foot wide strip of ground across which railroad tracks had been placed. The owner of the real estate sought to eject the railroad from the premises. The court stated, in finding the trial court erred in ejecting the railroad:

The law is settled in this state that, while mere license is revocable under all circumstances and at any time, a license may become an agreement on valuable consideration, as where the enjoyment of it must necessarily be preceded by the expenditure of money, and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for valuable consideration.

121 S.W. at 305.

In *Cape Girardeau & T.B.T.R. Co.* permission had been given to lay a track to connect with an existing track. The railway company that desired to lay the track contacted a representative of the company owning the land. It requested by telegraph:

"We need for construction of track to new incline we are now building, which is south of Manning's Landing, a strip of land one hundred feet wide, commencing at the south boundary of the land owned by Mr. Hobbs; thence practically parallel with the river and about three hundred feet inland to connect with the existing St. Louis & Gulf track a total distance, I should say, of about three thousand feet. Important. This is well known to your uncle, and I wish you would confer with him at once, and wire so work can be pushed as fast as possible. Material is now being received."

121 S.W. at 305.

The following response was received:

"Answering your telegram of yesterday. Will give you permission to lay track from south boundary line of Mrs. Hobbs' to a connection with existing St. Louis & Gulf Railway track. We are not in a situation now to either sell or make you a grant or right of way, and a revocable permit or license to lay a track is all we can give you, but as soon as matters to which you refer in your telegram are settled, we will come to an amicable agreement with you, and one that I know will be entirely satisfactory to you, as we feel very friendly to your interests."

121 S.W. at 305. The company entered the property and constructed the track.

The court in *Cape Girardeau & T.B.T.R. Co.* held that the property owner could not maintain ejectment against the railway that had constructed its tracks across the property "as it had entered upon the strip by the consent and permission of [the property owner], and constructed its track upon the assurance that later it would be granted a perfectly satisfactory arrangement. Having expended its money on the faith of that license, it could not be ousted of its privilege by an action of ejectment." 121 S.W. at 306. The court acknowledged that the landowner was entitled to com-

pensation for the use of the land, but concluded that issue had not been tried and was not before it. It reversed the ejectment judgment and remanded the case to permit the landowner to pursue other action consistent with the opinion.

Defendants assert that an easement by estoppel arises when a party to whom a license is granted is required to expend funds in order to enjoy the benefit of the license. They argue this was not a requirement for plaintiff's use of the land in question; that, in fact, plaintiff did not make a substantial expenditure of funds for that purpose.

Plaintiff, in arguing to the contrary, relies on maintenance of the overall area, both that owned by it and that owned by defendants. There was testimony that plaintiff maintained the parking area over the course of the period of its use by patching holes in the concrete surface and pouring asphalt and concrete. This was done "for keeping it up to where traffic can get in and out." In 1985 plaintiff contributed money to the maintenance of the travel area between its building and defendants' building. This area included the land *Hall II* determined plaintiff owned and the land *Hall II* determined defendants owned.

Plaintiff's expenditures and other actions directed to maintaining the travel area were made and undertaken for the purpose of keeping the area usable as a means of access to property plaintiff owned adjacent to the area. The expenditures plaintiff made and the acts it performed were not undertaken for the purpose of converting its license into, as described in *Cape Girardeau & T.B.T.R. Co.*, "an agreement on valuable consideration." 121 S.W. at 305. Plaintiff and its predecessors in title had long used the area for street and parking purposes. Plaintiff's expenditure of additional funds and any other acts of maintenance it performed were in aid of that use. There is no evidence that the amount plaintiff expended on defendants' proper-

ty was significant. It did not approach an expenditure of funds that would be required to construct a railroad track, as occurred in *Cape Girardeau & T.B.T.R. Co.*, or, as the example used in *Fuhr*, the cost of building a house.

■ Plaintiff suggests that its expenditure of funds for improvements on its own premises that adjoin defendants' property should be considered. Plaintiff constructed a loading dock on the part of the travel area it owned and made other improvements related to its business. Those expenditures, however, did nothing to enable plaintiff to use defendants' property. The expenditures facilitated plaintiff's use of its own property. They enabled plaintiff to use its own property in a manner more to its liking.

There was no evidence that plaintiff was expected to go to great expense in order to enjoy the use of the part of the travel area on defendants' property or that plaintiff incurred significant expense for that purpose. Under these facts equitable estoppel does not preclude plaintiff's licensor, defendants, from severing the relationship between plaintiff and defendants with respect to the travel area on defendants' property. Point I is granted.

■ Point II contends the trial court erred in finding plaintiff had been granted an "oral easement" to use the part of the travel area on defendants' property. Defendants argue there was no substantial evidence that there had been an oral agreement between the parties with respect to any right of plaintiff to use the part of the travel area on defendants' property; that the only testimony was that there had been "an 'understanding' that owners of one lot would move vehicles so as to not block access to the other lot's business."

■ The issue of whether an easement could be established by means of an oral agreement was addressed in *Majors v.*

*Bush,* 356 Mo. 17, 200 S.W.2d 892 (1947). The court explained:

> It is asserted that a parol agreement is insufficient to support an easement; that the only right the Bushes had was mere permission or a license and that such can never ripen into an easement. The applicable rule to the facts at hand is well stated in 28 C.J.S. Easements, § 24 p. 678, as follows: " * * * but an oral grant will be upheld where it is accompanied by consideration, action in reliance on the grant, and by the grantee's being permitted the granted use."

200 S.W.2d at 895.

In *Majors* adjoining landowners agreed to convert two lanes on their adjoining parcels of land into a single roadway. The party who initiated the negotiation to form a single roadway agreed to provide the expense and labor necessary to convert the lanes to one roadway. This required removal of a hedge on the section line that separated the two lanes. The agreement was that maintenance of the roadway would be shared equally. The court held that this agreement enabled the respective parties to use the portion of the roadway on the other's land "not by permission or by license, but as a matter of right, that means adversely." 200 S.W.2d at 896. The roadway had been used for 24 years. On that basis the court held the use had ripened into an easement; that the party whose use was contested had acquired an easement by adverse possession.

In this case, unlike in *Majors*, there was no evidence of a precise agreement between the current owners of the respective properties or their predecessors in title. Sam Sagehorn worked for Norris Grain, one of plaintiff's predecessors in title, from 1951 to about 1972. He told the trial court that Norris grain made very little use of the area in question; that its primary use had been for defendants' predecessors in title to park their produce trucks there. Mr. Sagehorn did not indicate whether this occurred on property that *Hall II* determined belonged to plaintiff or defendants.

He said that his employer and V.B. Hall, who owned the property that defendants now own, "had a very nice working condition and so forth"; they "tried to keep from conflicting with each other's traffic."

Melvin Kennedy testified that he had worked for plaintiff since 1989. He, his wife, daughter, and son-in-law owned plaintiff. He had been manager of a co-op that was a predecessor in title to plaintiff from about 1979 to 1986 or 1987. During the time he was manager of the co-op, the area was used to unload feed into the warehouse and load feed out to customers. He characterized the use as "the same basically that it is now, probably not as actively as it is now." He said as far as he knew, "it was always considered a general area to be used by both businesses."

This case differs from *Majors v. Bush, supra,* in that no agreement is shown. The trial court's finding "[t]hat each party has ... easement rights over the land of the other due to the oral agreements of the parties and the parties' predecessors in title which grant (or granted) to the other party (and/or each parties' [sic] predecessors in title) the easement rights over the other's property ..." is not supported by substantial evidence. There is no showing that the respective parties or their predecessors in title used the property of one another other than as trespassers or licensees. As such, their respective uses of the other's property was not under a claim of right and could not ripen into easements. *Sanford v. Kern,* 122 S.W. at 1055. The evidence did not reveal an agreement supported by consideration that permitted possession to be "blessed by a claim of right." *Id.* Point II is granted.

Point III asserts that the trial court erred in enjoining defendants from precluding plaintiff from defendants' property. Defendants assert that the evidence did not support that they would commit a legal wrong by so doing. For the reasons discussed with respect to Points I and II, Point III is well taken.

The part of the judgment declaring plaintiff to have an easement over defendants' property and imposing an injunction on defendants is reversed. The part of the judgment affirmed in *Hall II* is unaffected by this appeal. To that extent the judgment is affirmed in part. The case is remanded with directions to enter judgment consistent with this opinion.

CROW, P.J., and SHRUM, J., concur.