Power v. Dean.

POWER, Defendant in Error, v. DEAN et al., Plaintiffs in Error.

**St. Louis Court of Appeals, April 18, 1905.**

1. **EASEMENT: License.**  Where an owner of land for a money consideration, opened a strip across the side of his tract for his own use and that of other individuals as a road, the right to use it thus acquired by others was not a mere license revocable at the will of the owner.

2. ———: **Grant.**  An easement or private way cannot be granted except by deed; land cannot be dedicated to private use.

3. ———: **Prescription.**  But an easement in the nature of a private way may be acquired by ten years adverse use.

4. ———: ———: **License.**  And the right to a private way acquired by adverse use is a vested right and not a license.

5. ———: **Obstruction.**  Where a strip of ground, open for the private use of several neighbors, was enclosed for a pasture with gates for the convenience of those using the road, without the intention of claiming adversely or obstructing the roadway, this did not interrupt the continuous user which ripened into a prescriptive right to the easement.

Appeal from Scotland Circuit Court.—*Hon. Edwin R. McKee*, Judge.

REVERSED.

*E. R. Bartlett* for plaintiff in error.

All of the instructions for the plaintiff ignore the fact that the defendants in going upon the roadway was under claim of right and hence not a trespass, and as no damage was proven, the verdict should have been for defendants. 63 Mo. 577. Defendants going on the roadway was not illegal and hence not a trespass and any damage done there does not constitute the act, an act of trespass. Cook v. Redman, 45 Mo. App. 397; Davis v. Clark, 40 Mo. App. 515; Walker v. ———, 14 Mo. 373. The presumption of a grant had already been raised, by more than ten years prior to, such payment. Use and enjoyment of an easement for a period of ten years, raises the presumption of a grant, which becomes absolute, unless rebutted. House v. Montgomery, 19 Mo. App. 170; Pitzmun v. Boys, 11 Mo. 338. The lines were defined by the fence and there is no question as to what land was intended (a strip one rod wide); the land having been in uninterrupted use for more than thirty years, all presumptions were against the owner and in favor of an absolute grant, and his occasional putting temporary gates thereon, did not prevent the running of the statute. 9 Am. and Ency. Law, 308, 309; Tait v. Deaton, 19 Ill. 294.

*Smoot, Boyd & Smoot* and *J. M. Jayne* for defendant in error.

Plaintiffs in error seem to contend that because Mrs. Becker permitted them to use certain portions of her land (at the places in controversy) for a convenience to get to certain timber that this use established a road. A use of this kind is revocable at the pleasure of the licenser. An adverse right or easement can never grow out of a permissive use. Nelson v. Nelson, 41 Mo. App. 130, 136; Pitzman v. Boyce, 111 Mo. 387, 19 S. W. 1104. Permissive use, however long, will not

create an easement. Dunham v. Joyce, 129 Mo. 13, 31 S. W. 337. An adverse hostile claim must be asserted and brought home, but a mere license, convenience or privilege may be revoked after the lapse of many years. Hurt v. Adams, 86 Mo. App. 79.

GOODE, J.—This action of trespass was brought before a justice of the peace. The complaint is in two counts. The first alleges that on May 1, 1903, and continuously since that time, plaintiff was the owner and in possession of the southeast quarter of the northeast quarter of section 32, township 66, range 10; that he had said tract of land inclosed by a wire fence on or about May 2, 1903, and the defendant unlawfully and voluntarily tore loose said fence, pulled up the posts at the southeast corner of the tract and for about five rods east of said corner and left the same down; that in consequence stock escaped into plaintiff's field and damaged his crops. Judgment for five dollars and twice the damage inflicted was prayed in accordance with section 4573 of the Revised Statutes of 1899. The second count of the complaint is exactly like the first except that it charges defendants with having torn down the wire fencing at the northwest corner of plaintiff's land, instead of the southwest corner.

The cause was removed to the circuit court on the ground that title to land was involved, where it was tried and resulted in a verdict for the plaintiff for five dollars, on which judgment was entered and the defendant appealed to this court.

All the parties are neighboring farmers and the controversy is in regard to a strip of ground which the defendants contend was a public road; or at least that they owned the right to travel over the strip—in other words, enjoyed an easement in it. Plaintiff, on the other hand, contends said strip is part of his land; and on that assumption he inclosed it with wire fences on the north and south sides, thus including it in his forty-

acre inclosure and obstructing travel over it. The defendants cut down those fences and this action is to recover damages for the alleged trespass.

The controversy can be understood only by a study of the arrangement of the farms and roads in the locality; hence a plat of the neighborhood is inserted:

Charles Power, the plaintiff, owns the forty-acre tract on which his name is printed. Immediately north of his farm is a tract of forty acres owned by the defendant John W. Dean, father of the defendant Wm. Dean; southwest of Charles Power's tract lies one of forty-two acres owned by the defendant Joseph Power and north of Joseph Power's tract are seventy-eight acres designated as Peters' land. The strip of land in controversy, which varies in width from fifteen to twenty feet because of the irregular line of the fences on the west side, lies immediately west of Charles Power's tract and immediately east of the Joseph Power and the Peters farms. Prior to 1878 the tract now owned by Charles Power was owned by his mother, Mary J. Power, afterwards Mary J. Beckert. Her first husband (father of plaintiff) died in 1874 and two years later she married Nicholas Beckert. On August 29, 1878 she and Beckert gave a mortgage on the forty acres to John Shelley. This encumbrance was foreclosed and by purchase at the foreclosure sale J. M. Shelley became the owner of the land November 11, 1882. On December 20, 1888, Shelley conveyed to Charles Power, (the plaintiff) who previously had obtained a deed from his mother. Mary J. Beckert lived with her second husband but a few years when he went to Colorado hunting a home. She heard from him during the first year or two of his absence but no more. At the time of the trial of this action he had been absent and unheard of for about twenty years. Four or five farmers who were neigbors of Mrs. Beckert owned timber lands about two miles south of her home. Among them were Joseph Power and Wesley Tucker. The latter then owned the Dean land which he sold to Dean some thirteen years ago. About twenty-five years ago the country in that vicinity was largely unfenced, and the timber-owners had access to their timber lands to the south by the road which runs between the Irwin and the O'Day tracts shown on the plat. It will be seen that this road leads from another public road which extends

east and west just south of Charles Power's land. While
the country was open, persons living to the north of
the Irwin and O'Day tracts and desiring to travel the
road between those tracts, would cut across the south-
west corner of Charles Power's tract (then owned by
Mrs. Power-Beckert) and across the northeast corner of
the Peter's land. The public road running along the
north side of the Dean and Peters land communicated
with the roads to the south through this open country.
Immediately north of the Dean farm is the public school
of the neighborhood, situated on an east and west high-
way and just east of the land marked as the Adams tract.
When the proprietors began to inclose their farms, com-
munication between the north and south roads was in-
terrupted, thereby causing special inconvenience to the
owners of those timber lands which lay, as stated, two
miles or more south of the O'Day and Irwin tracts. To
obviate this difficulty Wesley Tucker, who then owned
the Dean farm, agreed to give a strip fifteen feet wide
off the west side of his land for a roadway, provided a
strip of the same width was procured from Mrs. Power,
so there would be a road fifteen feet wide leading from
the public road running by the schoolhouse and north
of Dean's land, to the road which lay south of the Power
tract and runs east and west. By obtaining access to
the latter road over said strip the persons interested
could pass from it into the road between the Irwin and
O'Day tracts and thence to their timber, as they had be-
fore. Mrs. Beckert agreed to give the strip for a small
money consideration. She was paid and set her fence
back along the entire west side of her forty acres for
fifteen feet, the present plaintiff assisting in the work.
He knew of the contract with his mother and testified
about it. In truth there is no material disagreement
among the witnesses regarding the arrangement with
Mrs. Beckert. Tucker set his fence back along
the west line of his farm, and thus a roadway
from the east and west road on the north to

the east and west road on the south, was opened.. The surface of the strip was cut up with gullies and bushes and trees grew over it. It was worked into condition for travel by cutting down the trees and bushes, filling the gullies and building a sort of bridge over the largest one. The road thus constructed remained open for twenty years or more before the alleged trespass by the defendants and was traveled continuously until the plaintiff ran fences across it at the northwest and southwest corners of his farm in May, 1903. Everbody who had occasion to travel over the road did so without objection; but it was used most by those persons who had procured it in order to reach their timber. It seemed that for a while Dean and Power kept a wire fence across the north and south ends, but with gates in the fences so that travel would not be obstructed. The fences and gates were put in for the purpose of making a cattle lot of the strip, but with the understanding that travel should not be interfered with. The evidence shows conclusively that those fences were not intended by Power as an assertion of a right to close the strip or deprive any person of the right to travel over it. The effect of the testimony on this point is that as the road was not a main highway, there was comparatively little travel over it and the neighbors specially interested were willing it should be used as an inclosure for cattle, provided gates were made so they could pass through when they wished. Just when these fences and gates were put in and when they were abandoned, the evidence leaves uncertain. As we gather, the time was long prior to the obstruction built by the plaintiff in 1903. This is not material; for it is not and cannot be contended the strip was inclosed for the purpose of asserting title on the part of Power or Dean, or any right to exclude persons who were in the habit of using the road. The inclosure could not be maintained on account of the quantity of travel through the gates and was abandoned. About May, 1903,

Charles Power (plaintiff) ran a wire fence diagonally from the southwest corner of his farm to the northwest corner of the Irwin tract, thence west a few feet to Joseph Power's east line, thence north along Joseph Power's east line to his north line; and, at the same time, built a fence from the northwest corner of his farm to the east line of the Peters land. These fences completely closed the road west of plaintiff's farm and led to the alleged trespass by the defendants, who cut down the fences.

The sole question in the case is whether Dean and Joseph Power enjoyed an easement in the strip—the right to travel over it. This question might be included in a larger one by asking if the strip, under the facts stated, constituted a public road. But for the purposes of the present case it is needless to make the inquiry so broad. It is only necessary to decide whether or not Dean and Power were entitled to use the strip as a private way.

The evidence shows, without contradiction, that plaintiff's mother accepted the money from the defendants or their grantors and other interested neighbors, for the ground in dispute, and afterwards, with the free help of her neighbors, moved her fences back so as to turn the strip out of her farm and open it to use either as a public or a private way; that Tucker did likewise along the west line of his farm, *in consideration of the strip given by Mrs. Beckert*; that thereafter the strip along the sides of both farms was improved as a roadway and used as such for twenty years or more by Mrs. Beckert, the plaintiff, the defendants and the general public. The arrangement was by agreement among the parties concerned for their common convenience; but without taking formal conveyances from Mrs. Beckert and Tucker. The propositions advanced in favor of plaintiff's claim of right to close the road at pleasure, rest exclusively on the effect of his mother's agreement and acts; and as the testimony presents no dispute concerning what she said or did, the effect is a court matter. It is insisted that

whatever right she gave to her neighbors to use the strip of ground in controversy was intended and accepted as a license; therefore was revocable by her or her grantees at any time. Pitzman v. Boyce, 111 Mo. 387, 19 S. W. 1104. The facts are inconsistent with such a view. The common use of the two parcels of land set out by Mrs. Beckert and Tucker constituted the consideration which influenced those owners to separate the parcels from their farms. Mrs. Beckert demanded and received a money consideration besides; and these things never would have been done on an understanding that she might reclaim the ground relinquished by her when she chose. Her testimony and that of all the witnesses who knew anything about the matter, conduces to show that though nothing was said about how long the ground was to be used as a road, the purpose of the persons who were procuring it was to get a roadway to their timber without restriction as to time. Mrs. Beckert's testimony shows she understood she was selling them a right of way without thought that she could close it up subsequently or expectation of doing so. She was somewhat interested in having the road opened to the north so her children would have a shorter way to the schoolhouse. The arrangement was for a perpetual easement if not for a public highway. The license theory is strongly insisted on because a license would be revocable, and, by demonstrating a permissive instead of an adverse use of the ground, would prevent the acquisition of an easement in the strip by prescription. What Mrs. Beckert aimed to do was to grant a way, public or private—at the very least a private way—to the parties with whom she dealt, by which they could obtain access to their timber. The conduct of the parties concerned inclines to prove that after the way was opened they all regarded and treated it as a public road. But Mrs. Beckert was a married woman when she agreed with her neighbors and set apart from her other land the strip in dispute, and advantage is taken of this fact by raising the proposition

that she could not dedicate the ground for either a public or a private way. This will be conceded, with the remark that a dedication of land to private use is probably not recognized by the law. As she executed no deed, the argument is that an easement, or right to use the strip as a private way, was never granted, because such a grant must be by deed. This proposition is sound too. But an easement in the nature of a private way may be acquired by prescription or ten years' adverse use, which is equivalent to a grant. In most cases the law allows the prescriptive right on the fiction of a prior grant of which the evidence is lost. In this case a fictitious grant need not be presumed, as there is proof of a futile attempt at an actual grant. Old theories about prescriptions and presumed grants, though still alluded to in opinions for the sake of seeming consistency, don't have much force in modern law. The question of a prescriptive right depends on adverse use for the limitation period. [House v. Montgomery, 19 Mo. App. 170, 179; Pitzman v. Boyce, 111 Mo. supra.] A right to the private way acquired by adverse use is a vested right and not a license. Autenrieth v. R. R., 36 Mo. App. 254, 260. Now, we have held that the evidence affords no ground for an inference that Mrs. Beckert granted a mere license over the land in controversy; have held, too, that she intended to grant either a public or a private way, and that it is immaterial to the rights of the defendants which sort of way was intended. It was immaterial, too, in the case last cited. But Mrs. Beckert's intention failed because the attempt to execute it was verbal instead of by deed. None the less, all parties supposed it had been executed and thereafter the neighbors who had contributed to the consideration paid Mrs. Beckert, used the strip under claim of right, and adversely to any right in her or the subsequent owners of the land from which the strip had been set apart, to reclaim it. As long as Mrs. Beckert owned the farm, it may be allowed that the Statute of Limitations would not run against

her; though something might be said in favor of the proposition that her husband was presumed to be dead. But it is the plaintiff who asserts a right to close the road, basing the claim on his ownership of the farm from which it was given; or sold, rather. He acquired the farm in 1888 and thereafter permitted a continuous and adverse use of the strip by the defendants and others until May, 1903, or about fifteen years. The mere circumstance that he and Dean used the strip as a cattle lot for a while with the consent of the neighbors concerned, without obstructing it as a roadway, is of no significance and, like the license theory, is misleading. Of course, if Power had inclosed the strip before there had been a ten years' use, intending to assert title and reclaim possession, the adverse use by the defendant would have been interrupted and a prescriptive easement, depending as it does on a continuous as well as an adverse use, would not have been acquired. But not the least fact indicates that plaintiff or Dean had any thought of contesting the use of the strip as a road when they inclosed it for cattle. In fact they were simply accommodated by the good will of their neighbors. We think the strip is a public or a private way, that its obstruction by the plaintiff was unlawful and the removal of the obstruction by the defendants lawful.

The judgment is reversed. All concur.