CLARENCE A. MAJORS and ETHEL M. MAJORS, Appellants, v. ALMA L. BUSH.—No. 39683.—200 S. W. (2d) 892.

Division Two, March 10, 1947.

*Conger R. Smith* for appellants.

18

*C. E. Lavery* for respondent.

WESTHUES, C.—Clarence A. Majors and his wife, Ethel, filed this suit in Jackson County, Missouri, to enjoin the defendant, Alma L. Bush, from using a lane over land owned by the Majors as an outlet to a public road. The defendant filed an answer wherein she asserted she had a right to use the lane because she had an easement therein by virtue of a contract and also because she had used the roadway openly, notoriouly and adversely for a period of twenty-four years. The trial court, after hearing evidence, entered a decree for the defendant. The theory of the trial court, as stated in the decree, was as follows:

"That the Defendant and those under whom she claims have enjoyed the use of said roadway openly, notoriously and adversely for a period of some twenty-four (24) years under claim of right, and that said use has been a continuous one for said period of twenty-four (24) years, and that said easement was acquired as a matter of contract, and that said contractual agreement was fully executed by the parties, and that title to said easement is quieted in this Defendant and her successors in title."

Plaintiffs appealed.

A plat was introduced in evidence which it was agreed correctly showed the true situation. We are embodying it herein as a part of this opinion. It is plaintiffs' theory that defendant had been notified not to use the lane; that her use of the lane had been by permission only and therefore she could have no easement therein. The location of the roadway or lane, the ownership of the various tracts of land and the location of the public roads as of the date of the trial, were as indicated on the plat. It will be noticed that two lanes are shown on the plat. Lane "A" is twelve feet wide and lane "B", immediately to the east thereof, sixteen feet wide. Lane "A" is located on the land owned by Thornton in section thirty-three and "B" is on the Majors' tract in section thirty-four. The two together make a roadway twenty-eight feet wide running northerly eighty rods. The lanes are divided by the section line between sections thirty-three and thirty-four. It will be noted that defendant Bush owns land in section thirty-three immediately north of the point where the lane stops. Lane "A", lying in section thirty-three, is not directly in controversy and the owner of the forty acres upon which lane "A" is located was not a party to and took no part in this lawsuit.

Plaintiffs purchased their eighty acres of land from Ben V. Hamilton in the year 1942. Mr. Hamilton had owned this land since 1904. The defendant and her husband, now deceased, purchased their land in the year 1920. At that time, so the evidence discloses, there was a hedge on the section line dividing sections thirty-four and thirty-three. The Bushes and their predecessors in title had used lane "A" over the Thornton tract. The Hamiltons had been using lane "B" to the east of the hedge. About the year 1924 the hedge was removed and the two lanes thrown together and up to the time this lawsuit was tried there was but one roadway.

Mr. Hamilton was called as a witness by plaintiffs. He testified that according to his best memory he had agreed with one Mr. Knorpp that the hedge be pulled and he, Hamilton, would stand half of the expense; that he desired the hedge to be removed because there was a gate that had to be opened and closed and often people using the lane would leave it open. The evidence shows that Mr. Knorpp was a renter on the Bush place. Mr. Hamilton further testified as follows:

"Q. You just pulled the hedge and widened the road and made it all in one? A. That's right.

"Q. Who paid for the pulling of that hedge? A. I paid for half of it and he paid for half of it.

"Q. Mr. Bush did? A. Yes. I suppose he did; he was to pay half."

A fence was constructed along the east line of lane "B". Hamilton testified as follows with reference thereto:

"Q. Who was it put in the fence? A. I did, and Mr. Riggs helped me. We were exchanging work like we did on the farm all the time.

"Q. You didn't pay Mr. Riggs anything for it? A. No, we exchanged work."

It was also in evidence that the road was graded after the hedge was removed. Mr. Hamilton testified as follows:

"Q. Who did that grading? A. The first grading that was done, Mr. Knorpp did.

"Q. Didn't Mr. Bush and Mr. Riggs after this hedge was pulled help to maintain that road? A. They did to a certain extent.

"Q. They did grade it? A. Riggs and me together graded it most."

Mr. Riggs referred to was a son-in-law of the Bushes and lived on the place many years.

Defendant's evidence was that the lane, as thrown together by the removal of the hedge and the grading of the roadway, had been used by her family for twenty-four years. Her evidence further was that about 1924 Mr. Hamilton and Mr. Bush agreed to remove the hedge, grade the roadway and maintain the same for their mutual benefit. The evidence shows beyond doubt that the Bushes and the Hamiltons shared the labor and expense in doing the work to establish the joint roadway. Mr. Hamilton, on rebuttal, denied he made any agreement with Mr. Bush and insisted the agreement was made with Mr. Knorpp, the tenant. Note his evidence:

"Q. Do you say you ever entered into any such agreement as that with Mr. Bush? A. No, sir.

"Q. Your testimony is as you said before that Mr. Knorpp came to you? A. He was the first man that came to me and mentioned the road, about pulling the hedge.

"Q. And you agreed with him that the hedge might be pulled and you would stand half of that expense? A. Yes, sir.

"Q. Was the hedge pulled A. Yes.

"Q. Did you pay half of that expense? A. I paid half of it, yes."

Mr. Hamilton, however, testified that Mr. Riggs helped maintain the roadway. Note his evidence:

"A. Yes, I dragged it several times, and Mr. Riggs drug it some, too, and I and Mr. Riggs run the grader over it about a year before I left."

As to permission given to the Bushes to use the road Hamilton testified:

"Q. Mr. Hamilton, after this hedge fence was pulled I will ask you to state whether or not you gave Mr. Bush or Mrs. Bush permission to use your lane? A. I just used it; I didn't give them permission. It was down there for them to use it or anybody else that wanted to use the road.

"Q. Anybody coming to the Bush farm, you let them use it? A. Yes."

The Bushes did not claim to have the exclusive right to use the lane and Mrs. Bush, the defendant, made no such claim at the trial of this case. After plaintiffs moved to the Hamilton farm a number of disputes arose over the lane, resulting in ill-feeling and the present lawsuit. Mr. Majors, one of plaintiffs, testified that he looked at the property before he purchased it and asked Mr. Hamilton about the lane; that Mr. Hamilton stated sixteen feet of the lane was on his farm and if he wanted to close it he could do so. Mr. Majors made no inquiry of the defendant, Mrs. Bush, as to what right she claimed in the roadway. As will be noted, the plat indicates that the defendant owns twenty acres of land immediately north of the Major tract and that this twenty acres abuts upon Hamilton road. Plaintiffs claim that the defendant has easy access to Hamilton road over this twenty acre tract.

Considering the above evidence, we are of the opinion that the trial court entered the proper decree. Appellants' brief contains twelve points wherein it is contended that the judgment of the trial court cannot be sustained. There being duplications we will dispose of them generally and not separately. It is asserted that a parol agreement is insufficient to support an easement; that the only right the Bushes had was mere permission or a license and that such can never ripen into an easement. The applicable rule to the facts at hand is well stated in 28 C. J. S., page 678, as follows:

". . . but an oral grant will be upheld where it is accompanied by consideration, action in reliance on the grant, and by the grantees being permitted the granted use."

All of these elements are present in the case before us and in addition thereto there was a use of the road for a period of twenty-four years. The cases cited by appellants, as for example, Kuhlman v. Stewart, 221 S. W. 31, 1. c. 33, 282 Mo. 108, are not in point, because that case and other similar cases are based on the theory that the oral grant or agreement was a mere permission or license and therefore not adverse and not under a claim of right, and that such a permission or license could not ripen into an easement by limitations. Judge Graves was the author of the opinion in the Kuhlman v. Stewart case. Judge Lamm wrote the opinion in Sanford v. Kern, 223 Mo. 616, 122 S. W. 1051. Judge Graves and the other members of division one concurred in the opinion. The facts in that case are such that the law expressed in the opinion are controlling here. The right to use the lane over which the lawsuit arose originated in a parol contract. Judge Lamm, speaking for the court, said:

"Plaintiff's case at bottom rests on prescription, that is, on adverse user as of right, openly and uninterruptedly, for more than ten

24 ·

years. The blunt question, then, is: Do the record facts make such a case? We think so.

"(b) In the first place, Sanford's claim to an easement originated in contract. He was not an interloper, squatter or mere trespasser. This is important as furnishing a foundation for a claim of right, because the Statute of Limitations, borrowed to effectuate prescriptive rights, can only be invoked by a person claiming by right and not by wrong. No flux of time will ripen a bad title into a good one unless possession is blessed by a claim of right.

"In the second place, the contract was *executed*, that is, performed and the contract consideration passed—the lane was opened, the fence built and accepted."

That language, with all its implications, is fully applicable to the facts proven in the case now before us. The court in the Sanford case also expressly approved an opinion of the St. Louis Court of Appeals in Power v. Dean, 112 Mo. App. 288, 86 S. W. 1100. In this opinion, written by Judge Goode, an easement was sustained by prescription which had its inception in an oral contract. This on the theory that there was a consideration, that the oral contract was fully executed and the lane used for more than ten years. It was there contended that the right given to use the lane was intended to be a mere license and therefore revocable at will. A more recent case on this subject was decided by division two of this court. See Jacobs v. Brewster, 354 Mo. 729, 190 S. W. (2d) 894. A thorough review of the question of the establishment of an easement by prescription will be found in that opinion. The law there announced, if applied to the present situation, would result in the affirmance of the judgment of the trial court. In the case before us Hamilton orally agreed with the Bushes to convert the two lanes into one roadway. It was agreed that the expense and labor of the conversion and the maintenance of the roadway should be shared equally. Hamilton testified that the change would be beneficial to him. The conclusion is inescapable that the roadway as established was to be of a permanent character. The Bushes ▆▆▆ used the roadway not by permission or by license, but as a matter of right, that means adversely. They continued to use the roadway for twenty-four years and therefore the use thereof ripened into an easement. It is true that the Bushes did not claim exclusive right to the roadway and that is not necessary to establish such an easement by prescription. What we have said is sufficient to demonstrate that the trial court was correct in ruling that the Bushes had acquired an easement by adverse possession.

The judgment of the trial court is therefore affirmed. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.