Benedict H. KOHLLEPPEL and Dorothy L. Kohlleppel, husband and wife, Appellants,

v.

H. Wayne OWENS and Ruth E. Owens, husband and wife, Respondents.

No. WD 30825.

Missouri Court of Appeals, Western District.

March 2, 1981.

Ronald M. Sokol, Kranitz & Kranitz, St. Joseph, for appellants.

Larry L. Zahnd, Glen A. Dietrich, Zahnd & Dietrich, Maryville, for respondents.

Before CLARK, P. J., DIXON and SOMERVILLE, JJ.

SOMERVILLE, Judge.

The origin of this appeal was a dispute between the Kohlleppels and the Owenses, adjoining landowners, as to their respective rights in a 1.58 acre triangular tract of land situate in the northwest corner of Kohlleppels' land in Nodaway County which was diagonally crossed by Mowry Creek.

The dispute erupted into litigation by the filing of a multi-count petition by Kohlleppels against the Owenses in early 1977. The multi-count petition may be generalized as variously asserting actions to quiet title, for ejectment, trespass and damages. The Owenses responded with an answer and a counterclaim. The latter may be generalized as seeking a declaration that the Owenses had an easement appurtenant in the 1.58 acre triangular tract of land for construction, maintenance and use of an "access road", a fence and drainage ditch ancillary thereto, and to "farm" the tip of the triangular tract of land which lay north and west of Mowry Creek.

Following a bench trial, a judgment, accompanied by exhaustive findings of fact and conclusions of law, was entered in favor of the Owenses and against the Kohlleppels on all counts of Kohlleppels' petition, and in favor of the Owenses and against the Kohlleppels on Owenses' counterclaim. An inclusive appeal was taken by Kohlleppels from the judgment.

The judgment rendered in favor of the Owenses on their counterclaim, in essence, ordered, adjudged and decreed that they were the "owners" of and "entitled" to an easement in the 1.58 acre triangular tract of land situate in the northwest corner of Kohlleppels' land, same being "appurtenant" to and "running" with Owenses' land, for (1) construction, maintenance and use of an "access road" on the southeast side of and parallel to Mowry Creek; for (2) construction and maintenance of a fence on the southeast side of and parallel to said "access road"; for (3) construction and maintenance of a drainage ditch between and parallel to said "access road" and fence and then running east at the north end thereof along the south side of the section line for a distance of approximately fifty (50) yards to the north end of a diversion terrace located on Kohlleppels' land; and (4) to "clear and farm" that portion of the 1.58 acre triangular tract of Kohlleppels' land lying north and west of Mowry Creek.

Kohlleppels concede in their brief that the scope of appellate review is circumscribed by *Murphy v. Carron*, 536 S.W.2d 30,

32 (Mo.banc 1976): "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong."

Kohlleppels have condensed a broad spectrum of issues into four points. Due to the extended, complicated nature of the facts in which they are immersed, no attempt will be made to delineate the points relied on until an overview of the evidence, comportable with the findings of fact and judgment entered by the trial court, has been set forth.

Kohlleppels are record owners in fee simple of all of the North Three-fourths (N ¾) of the West Half (West ½) of Section Twenty-one (21), Township Sixty-six (66) North (N), Range Thirty-four (34) West (W), Nodaway County, Missouri. They acquired title to said real property on December 22, 1971, by warranty deed from Gary and Betty Cline, husband and wife, who held title as tenants by the entirety. The Owenses are record owners in fee simple of all of the South Half (S ½) of the Southwest Quarter (SW ¼) of Section Sixteen (16), Township Sixty-six (66) North (N), Range Thirty-four (34) West (W), Nodaway County, Missouri. They acquired title to said property on June 10, 1971, by warranty deed from Wayne Owens' parents, Dale and Doris Owens. The north line of Kohlleppels' land and the south line of Owenses' land are contiguous.

A public road runs north and south along the west side of both tracts of land. Prior to "the 1940's" a public, section line, road ran east and west between the two tracts of land. Mowry Creek runs diagonally across the Owenses' land from northeast to southwest, continues in that direction across the disputed 1.58 acre triangular tract situate in the northwest corner of Kohlleppels'

land, and then goes under a bridge located on the north-south public road. Prior to "the 1940's" there was also a bridge across Mowry Creek on the east-west section line road which gave Dale and Doris Owens' predecessors in title access to that portion of the Owenses' land lying east of Mowry Creek. The bridge across Mowry Creek on the east-west section line road "washed out" prior to "the 1940's" and was never replaced. Consequently, the east-west section line road was abandoned, no longer maintained, and taken over by weeds and brush.

After the bridge across Mowry Creek on the east-west section line road "washed out", Dale and Doris Owens (parents of Wayne Owens), and their predecessors in title, acquired an appurtenant easement by prescription over what is now Kohlleppels' land, the Owens land being the dominant estate and the Kohlleppel land being the servient estate, for purposes of ingress and egress to that portion of the Owens land lying east of Mowry Creek. This appurtenant easement consisted of a well defined roadway which started on the west line of what is now the Kohlleppel land at a point approximately one quarter of a mile south of the Mowry Creek bridge on the north-south public road and then "meandered" in a northeasterly direction to a gate in a fence located on the section line between the Kohlleppel land and the Owens land. Use of this well defined roadway by Dale and Ruth Owens and their predecessors in title was open, visible, notorious, continuous, uninterrupted, adverse and under claim of right for a period of more than thirty (30) years prior to the summer of 1970.

In the summer of 1970 Dale Owens and Gary Cline informally met at or near the northwest corner of what is now the Kohlleppel land. In order to free the owner of what is now the Kohlleppel land from the inconvenience of having to farm around the meandering roadway the two orally agreed as follows: (1) the meandering road would be moved and relocated immediately southeast of and parallel to Mowry Creek by Dale Owens at his sole expense; (2) Dale

Owens at his sole expense would construct and maintain a fence immediately southeast of and parallel to the newly constructed road in order to relieve Gary Cline of maintaining a water gap across Mowry Creek; (3) Dale Owens at his sole expense would construct and maintain a drainage ditch starting at the north end of a diversion terrace on what is now the Kohlleppel land, then running west approximately fifty (50) yards along the south side of the section line to the north end of the new road to be constructed, and then running in a southwesterly direction between the new road and the new fence to a grader ditch located on the east side of the north-south public road; and (4) if Dale Owens wanted to clear the brush and timber off of that portion of what is now the Kohlleppel land lying north and west of Mowry Creek he, Dale Owens, "could farm it". At the time Gary Cline farmed and managed what is now the Kohlleppel land on behalf of himself and his wife.

In the fall of 1970, Dale Owens, pursuant to the oral agreement mentioned above and at his expense, built the new road and fence, constructed the drainage ditch, and cleared and brush and timber off of the tip of land lying north and west of Mowry Creek and started farming it. The access road, as relocated, and the drainage ditch and fence ancillary thereto, were apparent upon an ordinary inspection of the premises when Kohlleppels purchased the land from Clines.

For many years the north end of what is now Kohlleppels' land was pocketed with marshy areas by reason of surface water problems. Notwithstanding Kohlleppels' contention to the contrary, this condition was the natural aftermath of abandonment of the old east-west section line road and was neither occasioned nor compounded by any act of commission or omission on the part of the Owenses. Moreover, it may be reasonably inferred that the oral agreement entered into between Dale Owens and Gary Cline, and performance thereunder by Dale Owens, did not contemplate total alleviation of all the surface water problems on the north end of what is now the Kohlleppel land.

The Owenses, after they acquired title to their land, maintained the new road, fence and drainage ditch constructed by Dale Owens, and farmed the tip of land in question, until September, 1976, when they received notice in writing from Kohlleppels to cease trespassing on their land. The Owenses honored the written notice, except for use of the access road as a necessary means of ingress and egress to that portion of their land lying east of Mowry Creek, pending judicial determination of the rights of the respective parties.

Although not included in the findings of fact made by the trial court, the record also discloses that the tip of Kohlleppels' land lying north and west of Mowry Creek was four-tenths ($\frac{4}{10}$) of an acre in size, which, after being cleared of brush and timber, had a reasonable cash rental value of $75.00 per acre per year, or $30.00 ($\frac{4}{10}$th of 75.00) per year. The record fails to disclose whether the Owenses farmed the $\frac{4}{10}$th of an acre lying north and west of Mowry Creek after September of 1976.

In certain instances, several of the points relied on by Kohlleppels on appeal commingle multiple issues without any pattern of contextual consistency or relativity. Although Kohlleppels profess to have done so for purposes of clarity, doing so has obfuscated, rather than clarified, the issues on appeal. In order to clarify the issues on appeal for dispositional purposes, this court has undertaken the admittedly hazard fraught task of attempting to restate the points relied on by Kohlleppels on appeal. After carefully studying the four points in light of the arguments tendered in their support and the viable issues apparently sought to be raised thereby, this court concludes that they lend themselves to being renumbered and rephrased as follows: (1) that the oral agreement between Dale Owens and Gary Cline to relocate the original easement appurtenant, if in fact one had been acquired, fell within the statute of frauds and was therefore unenforceable; (2) that Dale Owens and his predecessors in

title never acquired an easement appurtenant by prescription to cross what is now the Kohlleppel land and therefore no consideration inured to the Clines to support enforcement of the oral agreement to relocate the access road; (3) that Kohlleppels acquired their land free of the burden of the easement appurtenant presently claimed because at the time of purchase they had no notice of its existence; (4) that the oral agreement between Dale Owens and Gary Cline was unenforceable in equity in favor of the Owenses and against the Kohlleppels because the Owenses did not come into court with "clean hands" by reason of their failure to properly maintain the drainage ditch ancillary to the relocated access road; (5) that the trial court's failure to describe the location of the easement appurtenant, as relocated, with greater specificity, and to fix upon the owners of the dominant estate the duty of maintenance, rendered the judgment fatally defective; and (6) in any event, the oral agreement between Dale Owens and Gary Cline regarding Dale Owens' right to farm the tip of what is now Kohlleppels' land lying north and west of Mowry Creek granted nothing more than a license which was revoked when Clines conveyed the land in question to the Kohlleppels.

■ Kohlleppels' contention (point 1) that the oral agreement between Dale Owens and Gary Cline to relocate the original easement appurtenant (if in fact one had been acquired) fell within the statute of frauds and was therefore unenforceable, is patently vulnerable. Its vulnerability is demonstrated by recognition of the equitable doctrine of "part performance", which is clearly expressed in 37 C.J.S. Frauds, Statute of § 248, p. 755, and quoted with approval in *Alonzo v. Laubert*, 418 S.W.2d 94, 97 (Mo.1967): " 'Where one party relying on an oral contract has so far performed his part of it that it would be perpetrating a fraud on him to allow the other to repudiate the contract and to set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute'." Concomitantly, applicability of this doctrine with respect to

easements is recognized in *Majors v. Bush*, 356 Mo. 17, 200 S.W.2d 892, 895 (1947): "It is asserted that a parol agreement is insufficient to support an easement; that the only right the Bushes had was mere permission or a license and that such can never ripen into an easement. The applicable rule to the facts at hand is well state in 28 C.J.S. Easements § 24, p. 678, as follows: ' * * * but an oral grant will be upheld where it is accompanied by consideration, action in reliance on the grant, and by the grantee's being permitted the granted use.' " When the facts at hand are juxtaposed with the principles just set forth, it is clear that the trial court properly held that the oral agreement between Dale Owens and Gary Cline, coupled with Dale Owens' performance thereunder, was enforceable in equity and that the relocated access road and attendant fence and drainage ditch constituted an easement appurtenant benefiting the Owens land and burdening the Kohlleppel land notwithstanding the statute of frauds. The existence of consideration flowing to the Clines, previous owners of the servient estate, will subsequently be developed in greater detail. Moreover, the legal status of any right on the part of Dale Owens, or the Owenses as his immediate successors in title, to farm the tip of land lying north and west of Mowry Creek will hereinafter be separately treated.

■ Kohlleppels' contention (point 2) that Dale Owens and his predecessors in title never acquired an easement appurtenant by prescription to cross what is now the Kohlleppel land and therefore no consideration inured to the Clines to support enforcement of the oral agreement to relocate the access road, as hereinafter demonstrated, is not well taken. Kohlleppels' argument in support thereof, if correctly perceived by this court, is in two stages. In stage one they argue that the finding of the trial court that the Owenses' predecessors in title acquired an easement appurtenant by prescription in the meandering road, which was subsequently relocated pursuant to the oral agreement, was erroneous because the evidence was insufficient to show

that it followed a well defined course, and that there was a total lack of evidence that its use was adverse. In stage two they argue that by reason of the posture of the evidence in the dual respects mentioned, Owenses' predecessors in title, at best, had nothing more than a license to cross what is now Kohlleppels' land, which was revocable, and therefore no consideration inured to the Clines to support the oral agreement. Kohlleppels cite 28 C.J.S. Easements § 18f, p. 670, and 25 Am.Jur.2d, Easements and Licenses, § 63, p. 471, for the broad proposition that a right of way cannot be acquired by prescription unless the use follows a well defined course. Suffice it to say, the trial court's finding that the meandering road followed a well defined course was supported by substantial evidence. Kohlleppels' companion contention that no evidence was adduced that use of the meandering road was adverse rather than permissive, even if true, does not support their summary conclusion that an easement appurtenant by prescription therein was never acquired by Owenses' predecessor in title. As pointed out by Kohlleppels, the requisite elements for establishing an easement appurtenant by prescription are that the use be open, visible, notorious, continuous, uninterrupted, adverse and under claim of right for a period of more that ten (10) years. See *Spooner v. Bates*, 550 S.W.2d 200, 201 (Mo. App.1977), and cases therein cited. However, the burden resting on one claiming an easement appurtenant by prescription to prove that the use was adverse has been realistically tempered. As held in *Fassold v. Shamburg*, 350 Mo. 464, 166 S.W.2d 571, 572 (1942), "in the absence of some showing that the use was permissive in its origin it is well settled that when one claims an easement by prescription and shows an open, continuous, visible, and uninterrupted use for the period of the 10-year statute of limitation, the burden is cast upon the landowner to show that the use was permissive, rather than adverse, if he claims it to have been so." This principle has been followed and applied in numerous cases, e. g.: *Huter v. Birk*, 439 S.W.2d 741, 744 (Mo.1969); *Speer v. Carr*, 429 S.W.2d 266, 268 (Mo.

1968); *Dalton v. Johnson*, 320 S.W.2d 569, 573 (Mo.1959); and *Osburn v. Supreme Exp. & Transfer Co.*, 590 S.W.2d 360, 373 (Mo.App.1979). Assuming, arguendo, some credence in Kohlleppels' assessment of this isolated phase of the evidence, the purported evidentiary void relied on was not fatal as there was no evidence that use of the meandering road was permissive in its origin and Kohlleppels failed to meet the burden thereby cast on them of going forward with evidence to show that use of the meandering road was permissive rather than adverse. Having failed to establish the first stage of their argument, it necessarily follows that the second stage of their argument, totally dependant as it was upon establishment of the first stage, also fails.

The principal motivating factor for relocating the existing easement appurtenant was to partially alleviate the burden borne by the servient estate. Freeing the owners of the servient estate from the inconvenience of farming around the meandering road was sufficient consideration to support the oral agreement for its relocation and the ancillary fence and drainage ditch. Pragmatically viewed, the oral agreement did not create or grant a new easement appurtenant but merely relocated one already in existence.

■ The next point (3) advanced by Kohlleppels, that they purchased the land from Clines free of the burden of the easement appurtenant claimed by the Owenses because they had no notice of its existence, is refuted when the applicable facts are weighed in light of existing case authority. The findings of fact by the trial court reveal that the easement appurtenant claimed by Owens was apparent upon an ordinary inspection of the servient estate. As stated in *Drainage District No. 48 of Dunklin County v. Small*, 318 S.W.2d 497, 502 (Mo. banc 1958), "a purchaser of real estate is charged with notice of an easement where the existence of the servitude is apparent upon an ordinary inspection of the premises." See also: *Benson v. Fekete*, 424 S.W.2d 729, 741–42 (Mo.banc 1968); *Loumar Development Co. v. Redel*, 369 S.W.2d

252, 257 (Mo.1963); and *Guerin v. Yocum*, 506 S.W.2d 46, 48 (Mo.App.1974).

Kohlleppels' reliance (point 4) on the venerable equity maxim of "clean hands" for challenging enforcement of the oral agreement in equity brings into focus certain significant areas of evidence. Their challenge rises or falls on the contention that the Owenses failed to properly maintain the newly constructed road, fence and drainage ditch as evidenced by the fact that surface water problems continued to plague the north portion of their land. Certain salient findings of fact by the trial court, all of which were supported by substantial evidence, refute Kohlleppels' challenge. Reference is made to the following findings of fact: (1) the surface water problems on the north portion of what is now Kohlleppels' land were of long standing and were neither compounded nor worsened by the access road, drainage ditch and fence constructed pursuant to the oral agreement; and (2) the Owenses maintained the newly constructed road, fence and drainage ditch in a reasonable manner until September of 1976, when they received written notice from Kohlleppels to cease trespassing on their land.

Kohlleppels (point 5) question the efficacy of the judgment by reason of its failure to describe the location of the easement with sufficient "specificity" and in not fixing the duty of maintenance upon the Owenses. The judgment itself dispels any viable question as to the alleged uncertainty of the description of the easement. Insofar as here pertinent, the judgment ordered, adjudged and decreed that "Defendants [the Owenses] are the owners of and entitled to an easement . . . in a triangular tract located at the Northwest Corner of Section Twenty-one (21), Township Sixty-six (66), Range Thirty-four (34), Nodaway County, Missouri, . . . which includes the following rights: (a) For the location, construction, use and maintenance of an access road of sufficient width to accommodate vehicles, farm machinery and equipment running along the South and Southeasterly edge of the Mowry Creek or Ditch in the

Northwest Corner of said Section Twenty-one (21), commencing at the public road on the West side of said Section and running thence Northeasterly to the North line of said Section Twenty-one (21), all on the South side of the Mowry Creek or Ditch, (b) To construct and maintain a fence along the South and East side of said road joining the North and West fence lines of the North Three-Fourths (N ¾) of the West Half (W ½) of said Section Twenty-one (21) thereby eliminating the owners of said land from maintaining a water gap across the Mowry Ditch; said fence presently located at a point approximately 350 feet South of the Northwest Corner of said Section Twenty-one (21) and running Northeasterly to a point approximately 364 feet East of said Northwest Corner, (c) To build and maintain a drainage ditch from the county road on the West of Section Twenty-one (21) along the said roadway running to the Northerly end thereof, thence East on the South side of the North line of Section Twenty-one (21) approximately 50 yards or so to the North end of the diversion terrace in the Northwest Quarter (NW ¼) of said Section Twenty-one (21), otherwise stated as a drainage area to go from the North end of the diversion terrace in the Northwest Quarter (NW ¼) of said Section Twenty-one (21), Township Sixty-six (66), Range Thirty-four (34) to the roadway, Southerly along said roadway in said triangular tract on the South side thereof to the county road on the West line of said Section Twenty-one (21); . . . ." Although it may be argued that the description could have been more precise, "less detail and precision should be and is demanded in describing and defining the route of a country road or way of access across a farm . . . than in fixing and limiting a driveway easement between city lots." *Allen v. Smith*, 375 S.W.2d 874, 883 (Mo. App.1964).

Nor can the efficacy of the judgment be questioned because it failed to fix the duty of maintenance upon the Owenses. Absent an agreement to the contrary, the law imposes a duty upon the owner of a dominant estate to maintain and repair an

easement appurtenant. *Swingler v. Robinson*, 321 S.W.2d 29, 32 (Mo.App.1959).

Kohlleppels complain (point 6) that the trial court erred in holding that the right claimed by the Owenses to farm the tip of Kohlleppels' land lying north and west of Mowry Creek was an easement appurtenant which ran with the land. An analysis of the respective attributes of easements appurtenant and licenses demonstrates that the complaint is well taken. The basic attributes of an easement appurtenant are set forth as follows in 28 C.J.S. Easements § 4a, p. 633: "An easement appurtenant is an incorporeal right which is attached to a superior right and passes as an incident thereto. It inheres in the land to which it is attached, is necessary to its enjoyment, cannot exist separate and apart therefrom, and passes to the heirs or assigns of the owner of the land." The basic attributes of a license in respect of real property are set forth as follows in 53 C.J.S. Licenses § 79, p. 806: "A license in respect of real property is an authority or permission to do a particular act or series of acts upon the land of another without possessing any interest or estate in such land." The permission given Dale Owens to farm the tip of what is now Kohlleppels' land lying north and west of Mowry Creek constituted, at best, a license with respect to real property as it was not "necessary" to enable Dale Owens to "enjoy" the use of his land, had no inherent connection with his land, and clearly could have existed separate and apart therefrom. The right to farm the tip of land was a privilege which Dale Owens could have enjoyed regardless of whether he owned any other land, and, although it may have benefited him personally, it was not inherently beneficial to his own land. To hold that the oral permission given to Dale Owens to farm the tip of land constituted an easement appurtenant would, for all practical purposes, be tantamount to holding that he and his heirs or assigns had all of the benefits of an estate in fee in said tip of land because farming was the only productive use for which it was accommodated and for which, in fact, it was used. As a license respecting real property is merely a right to enter on another's land to do a particular act or series of acts it is generally revocable by the licensor. *State ex rel. Highway Com'n. v. Johnson*, 592 S.W.2d 854, 858 (Mo.App.1979). A conveyance of land to which a license appertains constitutes a revocation of such license. *Houx v. Seat*, 26 Mo. 178 (1858). In view of the attendant facts and standing of the parties in this litigation, no equitable considerations surface to question the conveyance by Clines to Kohlleppels as a revocation of Dale Owens' license to farm the tip of land lying north and west of Mowry Creek. Accordingly, any right Dale Owens had to farm the tip of land was revoked as of December 22, 1971, the date Clines deeded their land to Kohlleppels.

Having concluded that Dale Owens had only a license to farm the tip of land lying north and west of Mowry Creek which was revoked on December 22, 1971, that part of the judgment declaring that the Owenses had an easement appurtenant running with the land to farm said tip of ground rested on an erroneous application of law. Such being the case, farming the tip of land lying north and west of Mowry Creek by the Owenses in derogation of Kohlleppels' exclusive ownership and rights therein may entitle Kohlleppels to a judgment for money damages against the Owenses.

The synergy of facts, law and scope of appellate review in this case mandate that the judgment of the trial court be affirmed in part and reversed in part. Accordingly, this case is remanded to the trial court with instructions to modify its judgment and entertain further proceedings in conformity with this opinion, to wit: (1) all provisions of the judgment ordering, adjudging and decreeing that use and maintenance of the access road and ancillary fence and drainage ditch constitute an easement appurtenant running with the land, the Owens land being the dominant estate and the Kohlleppel land being the servient estate, are affirmed; (2) all provisions of the judgment ordering, adjudging and decreeing that the Owenses are the owners of and entitled to an easement appurtenant running with the

land to farm that portion of Kohlleppels' land lying north and west of Mowry Creek shall be stricken and deleted; (3) all provisions of the judgment finding in favor of the Owenses and against the Kohlleppels on all counts of Kohlleppels' petition are affirmed except in one respect, namely, it shall be ordered, adjudged and decreed that Kohlleppels are the owners of and entitled to exclusive possession of that portion of their land lying north and west of Mowry Creek free of the burden of any easement appurtenant or right of any kind claimed by the Owenses; and (4) to entertain further proceedings to determine whether Kohlleppels are entitled to a judgment for money damages against the Owenses for farming that portion of Kohlleppels' land lying north and west of Mowry Creek and, if so, the amount thereof, and to further modify its original judgment accordingly.

Judgment affirmed in part, reversed in part, and cause remanded to the trial court to modify its judgment and entertain further proceedings in accordance with this opinion.

All concur.